## DEUTSCHE BANK NATIONAL TRUST

v.

## GILLIUM.

Court of Common Pleas of Ohio,
Hamilton County.

No. A0709391.

Decided Jan. 13, 2009.

John Cummins, for plaintiff Deutsche Bank National Trust.

Noel M. Morgan, for defendants/third-party plaintiffs Christopher and Dorothy Gillium.

John C. Frooman, for defendant/third-party defendants Lance Trester and American Foreclosure Professionals, Inc.

Third-party defendant David N. Patterson, pro se.

---

PAT DEWINE, Judge.

{¶ 1} This matter came before the court on the objections to the magistrate's decision filed on November 12, 2008, by third-party defendant David Patterson. A hearing was held before this court on January 8, 2009.

**Background**

{¶ 2} The underlying action is a mortgage-foreclosure action filed against defendants and third-party plaintiffs Christopher and Dorothy Gillium. The Gilliums, with leave of court, asserted claims against two parties involved in the loan's origination and against three parties whom the Gilliums had hired to defend them in the foreclosure case, including attorney David Patterson. The claims asserted against Patterson were for (1) professional negligence and malpractice and (2) civil conspiracy with the other two codefendants.

{¶ 3} Boiled to its essence, the third-party complaint alleges that Patterson, along with codefendants Foreclosure Assistance Professionals ("FAP") and a principal of FAP, Lance Trester, engaged in a scam to prey on foreclosure defendants in which little or no services were provided in return for an up-front fee of $850 that was paid for foreclosure assistance.

{¶ 4} Apparently, after an action for foreclosure was filed against them, the Gilliums contracted with FAP. FAP arranged for Patterson to provide representation to the Gilliums, but Patterson is alleged to have provided only the most nominal representation. Ultimately, after a final judgment was entered against the Gilliums and the sheriff's sale was ordered, the Gilliums terminated Patterson's services and obtained new counsel, who convinced the court to vacate the judgment.

{¶ 5} Patterson moved to dismiss the third-party complaint, arguing that the case was not ripe for review, that the conspiracy claim was improper under Ohio law on the basis that claims against an attorney who had provided legal services could be stated only as professional-malpractice claims, and that the complaint failed to allege the essential elements of a malpractice claim.

{¶ 6} The magistrate, in a written decision, recommended that the motion to dismiss be overruled. The magistrate concluded that all the essential elements of a legal-malpractice claim were alleged and noted that the facts closely resembled

those recently reviewed by the Ohio Supreme Court in an attorney-discipline proceeding, *Cincinnati Bar Assn. v. Mullaney*, 119 Ohio St.3d 412, 2008-Ohio-4541, 894 N.E.2d 1210. The magistrate also found that the complaint alleged the essential elements of a civil-conspiracy claim, but the magistrate did not address the argument that such a claim could not properly be brought against an attorney.

{¶ 7} Patterson filed timely objections, challenging the magistrate's conclusions on the sufficiency of the malpractice claims, and again raising arguments as to ripeness and the availability of the conspiracy claim. Review is de novo.

**Sufficiency of Malpractice Claim**

█ {¶ 8} The elements of a claim for malpractice under Ohio law are (1) an attorney-client relationship giving rise to a duty, (2) a breach of that duty and a failure to conform to the standard required by law, and (3) a causal connection between the conduct complained of and the resulting damage or loss. *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 427, 674 N.E.2d 1164. The existence of the attorney-client relationship is not in dispute.

█ {¶ 9} Patterson argues that the complaint does not allege any facts setting forth malpractice. The complaint, however, alleges, inter alia, that Patterson failed to communicate with his clients, that the amended answer filed by Patterson failed to allege all available affirmative defenses, that Patterson neither filed any discovery nor contacted opposing counsel, that Patterson did not respond to summary judgment, resulting in a final judgment and order of sale being entered against the Gilliums, and that Patterson did not inform the Gilliums of the judgment or the order of sale. Applying the liberal standards for review of a complaint under Civ.R. 12(b)(6), the allegations sufficiently allege a breach of duty. It may turn out to be the case, as Patterson suggests, that there were no valid grounds to oppose summary judgment and that the answer adequately alleged all affirmative defenses available. But at this juncture, the allegations of the complaint, including Patterson's failure to meaningfully communicate with his clients, are sufficient to meet the pleading burden.

{¶ 10} Patterson is correct that the fact that an attorney has violated a Disciplinary Rule does not necessarily give rise to a malpractice action. See *Northwestern Life Ins. Co. v. Rogers* (1989), 61 Ohio App.3d 506, 573 N.E.2d 159. Many of the Disciplinary Rules, however, provide useful guidance as to the duties that an attorney owes to his client. In *Mullaney*, which was cited by the magistrate, the Supreme Court reviewed a similar foreclosure-assistance operation and cautioned that such arrangements result "in an overriding failure to attend to clients' individualized needs and a surrender of a lawyer's professional judgment." 119 Ohio St.3d 412, 2008-Ohio-4541, 894 N.E.2d 1210, ¶ 30. In the

case at bar, the complaint alleges conduct that not only violates the Disciplinary Rules but also constitutes malpractice.

{¶ 11} Patterson also argues that the claim fails because it does not allege any damages flowing from the alleged malpractice. The complaint alleges, however, that as a result of Patterson's conduct, the Gilliums lost the $850 they paid to FAP, of which Patterson received a share. It further alleges that because of Patterson's failure to provide adequate representation, a judgment was entered and a sale ordered. There seems to be a considerable question at this juncture as to whether the Gilliums ultimately will be able to prove any damages beyond the fees paid to FAP. For the present purposes, however, the damages alleged are sufficient to survive a motion to dismiss.

**Ripeness**

{¶ 12} There is not much to Patterson's claim that the case should be dismissed based upon the ripeness doctrine. The basis for the argument seems to be that the extent of the Gilliums' damages is not known, because they have not lost their home at this point in the proceedings. At oral argument, Patterson suggested that the claim would not be ripe until the foreclosure litigation reached its conclusion and it was determined whether the Gilliums would in fact lose their home. The Gilliums assert that the claim is in fact ripe because the Gilliums have already suffered damage as a result of the fee paid to FAP, as well as the hardship and distress caused by the entry of judgment and the order of a sheriff's sale. At oral argument, counsel for the Gilliums also noted that there was uncertainty, in the event that the Gilliums did ultimately lose their home, whether such damages would be chargeable to Patterson, because the Gilliums had obtained new counsel, successfully vacated the judgment, and now were vigorously contesting the foreclosure action.

{¶ 13} "The ripeness doctrine is concerned primarily with the justiciability of claims, not with certainty as to the quantum of damages." *Moon v. Hyosung (Am.), Inc.* (C.A.6, 1994), 36 F.3d 1097, 1994 WL 529860, at *6. It is aimed at "prevent[ing] the courts through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Laboratories v. Gardner* (1967), 387 U.S. 136, 146, 87 S.Ct. 1507, 18 L.Ed.2d 681, overruled on other grounds by *Califano v. Sanders* (1977), 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192. Here the conduct alleged to have caused the injury has taken place, and the complaint alleges damages flowing from that conduct. While the full extent of the Gilliums' injury may not yet be known, the complaint alleges much more than an abstract disagreement. Quite simply, the concerns behind the ripeness doctrine are not implicated here.

**Sufficiency of Conspiracy Claim**

{¶ 14} Patterson argues that the civil-conspiracy claim should be dismissed because the only claims that may be asserted against a lawyer are malpractice claims. *See Gullatte v. Rion* (2000), 145 Ohio App.3d 620, 626, 763 N.E.2d 1215. It is true that under Ohio law, claims arising out of the manner in which a client is represented in the attorney/client relationship sound in legal malpractice regardless of the label attached. *Jenkins v. Talda* (June 9, 1994), Franklin App. No. 94APE02–137, 1994 WL 250156. In this case, however, the allegation is that Patterson participated in a common scheme that included not only the provision of nominal legal services by Patterson but also conduct by the other third-party defendants that included violations of the Consumer Sales Practices Act, breach of fiduciary duty, and common-law fraud. While liability for Patterson's actions within the scope of the attorney-client relationship may sound only in malpractice, that doctrine does not prevent a civil-conspiracy action from going forward that is predicated upon acts that extend beyond the attorney-client relationship. Were the rule otherwise, an attorney would receive immunity from civil-conspiracy actions; certainly, such is not the case. The magistrate properly found that the complaint alleged the elements of a claim for civil conspiracy against Patterson.

{¶ 15} The objections to the magistrate's decision are overruled, and the decision of the magistrate is adopted.

So ordered.