[Cite as *Seoane-Vazquez v. Rosenberg*, 2019-Ohio-4997.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Enrique Seoane-Vazquez, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 19AP-16 |
| v. | : | (C.P.C. No. 15CV-8107) |
| Eric John Rosenberg, Esq. et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

---

D E C I S I O N

Rendered on December 5, 2019

---

**On brief:** *Hammond Law Office*, and *Gary W. Hammond*, for appellant. **Argued:** *Gary W. Hammond.*

**On brief:** *Lane Alton, Edward G. Hubbard*, and *Rick E. Marsh*, for appellees. **Argued:** *Edward G. Hubbard.*

---

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Enrique Seoane-Vazquez, appeals from a final judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees Eric John Rosenberg, Esq., David Terry Ball, Esq., Rosenberg & Ball Co., LPA, and David T. Ball Law Office Co., LPA (hereinafter "appellees") in appellant's action for legal malpractice and related claims.

**I. Facts and Procedural History**

{¶ 2} Appellant was employed by The Ohio State University College of Pharmacy as a professor between 2002 and 2010. This was a tenure-tracked position, and his advancement depended on favorable assessments of his scholarship, teaching reviews, and other service to the College of Pharmacy. As part of this service requirement, appellant duly served as a member of a search committee for an open professorship in 2004. Appellant

expressed his reservations about the ultimately successful candidate, Dr. Rajesh Balkrishnan, then teaching at a university in Texas. Strained relations ensued when Dr. Balkrishnan joined the OSU faculty.

{¶ 3} In 2005, appellant filed a complaint with the Dean of the college, Dr. Robert Brueggemeier, who initiated an investigation whose results only partially satisfied appellant. Appellant then filed a charge of discrimination with the Federal Equal Employment Opportunity Commission ("EEOC") in September 2006 alleging discrimination based on ethnicity, reflecting the general lines of the split between faculty members within the College of Pharmacy. The EEOC closed its file in May 2007 and issued a "right to sue" letter, whereupon appellant had 90 days to initiate a court action. *See* 42 U.S.C. 2000e-5(e)(1) through (f)(1). In August 2007, appellant filed his pro se complaint in the Federal District Court for the Southern District of Ohio (hereinafter "case No. 07-775"). Shortly thereafter, appellant retained attorney Rosenberg to represent him in the matter. Around this time, Rosenberg was also retained to represent appellant's fiancée Rosa Rodriquez-Mongui, also an instructor-researcher at OSU, and Sheryl Szeinbach, another OSU professor.

{¶ 4} Even as his EEOC complaint and lawsuit against the university progressed, appellant continued reviews and progress toward tenure. In early 2007, the College of Pharmacy conducted appellant's fourth-year review, which was not entirely favorable in the areas of research, publication, and teaching skills. Through 2008 and 2009, appellant exchanged correspondence with his department chair, attempting to strengthen his case for tenure. On December 17, 2008, Dr. Brueggemeier recommended that the university's Provost, Joseph Alutto, deny appellant's tenure. Appellant then submitted a rebuttal letter, complete with exhibits, again asserting that an ethnic divide among the faculty of the College of Pharmacy had poisoned the tenure process, and the denial of tenure also constituted retaliation against appellant for his EEOC complaint and subsequent suit in federal court. On April 8, 2009, Provost Alutto denied appellant tenure. An internal review and appeal concluded with an October 23, 2009 decision of the university's faculty hearing committee upholding the denial of tenure, albeit expressing disappointment at the breakdown in faculty collegiality within the College of Pharmacy.

{¶ 5} Before completion of the internal appeals at OSU, appellant, through attorney Rosenberg, filed a notice of voluntary dismissal without prejudice in federal court in case No. 07-775. On October 16, 2009, the federal court noted the notice of dismissal did not comport with the Federal Rules of Civil Procedure, considered the notice as a motion for leave to dismiss, and granted it. The wisdom of this dismissal, in light of its subsequent curtailment of appellant's refiled claims in federal court, constituted the factual basis for many of appellant's initial legal malpractice claims in the present case.

{¶ 6} Appellant returned to the EEOC with a new complaint on November 22, 2009, this time stressing alleged instances of retaliation during the tenure review process. On February 6, 2010, appellant filed a new formal charge of discrimination with the EEOC. The EEOC again did not pursue the matter, and issued another right-to-sue letter in June 2010.

{¶ 7} With the latest right-to-sue letter in hand, appellant returned to federal court in July 2010 ("case No. 10-622"). Because of the reach-back timing governing Title 7 suits in federal court, the federal court concluded that appellant, because of his prior dismissal of case No. 07-775, could not bring claims for any acts of discrimination occurring before January 6, 2009, thus barring all claims based on appellant's original national-origin discrimination claims asserted in case No. 07-775, and many alleged acts of retaliation preceding the university's final decision denying appellant's tenure application. The federal court eventually granted summary judgment in favor of all defendants, finding appellant had been unable to present evidence to maintain a genuine issue of material fact on the question of whether Provost Alutto acted with retaliatory animus, and there was no evidence of retaliatory action in the University's internal appeal process. Appellant then appealed the Southern District's final judgment to the United States Court of Appeals for the Sixth Circuit, which affirmed. *Seoane-Vazquez v. Ohio State Univ.*, 577 Fed. Appx. 418 (6th Cir.2014).

{¶ 8} Appellant then began the current malpractice litigation against his former counsel in the federal cases. He filed his initial complaint on September 15, 2015; an amended complaint on November 11, 2015; and a second amended complaint on November 18, 2016. The initial complaint set forth ten causes of action against appellees: (1) legal malpractice for advising appellant to dismiss his first action in federal court, case

No. 07-775; (2) legal malpractice for advising appellant to refile in federal court, case No. 10-622 in 2010, including all prior claims from the first federal suit despite the fact these were precluded by the prior dismissal; (3) legal malpractice for negligence in advising appellant in connection with proceedings before the EEOC and Ohio Civil Rights Commission; (4) legal malpractice for failing to amend appellant's first and second federal complaints to preserve appellant's Ohio civil rights claims that were not time-barred; (5) legal malpractice for failing to amend appellant's complaints to preserve spoliation claims; (6) legal malpractice for failing to advise appellant to request an external review of his tenure application; (7) fraud committed by appellees based on various statements made in an attempt to shield themselves from malpractice liability; (8) legal malpractice for appellees' negligent representation of appellant in his appeal of case No. 10-622 to the Sixth Circuit; (9) consumer fraud in violation of Ohio's Consumer Sales Practices Act, based on appellees' unfair, deceptive, and unconscionable practices during their representation of appellant; and (10) conversion by appellees of privileged information discovered through their representation of appellant, and use of that information to secure representation of appellant's co-workers and obtain judgments in favor of these other clients.

{¶ 9} The first amended complaint generally restated the claims set forth in the initial complaint. On May 24, 2016, the trial court granted appellees' motion to dismiss Count 7, fraud, and Count 10, conversion. Appellant voluntarily dismissed Count 9, consumer fraud.

{¶ 10} The proposed second amended complaint, which was filed late enough to require leave of court, restated the previous claims but interposed a new Count 2, alleging malpractice for failure to properly counsel appellant to accept settlement offers made by OSU prior to dismissal of the first federal case and, thus, renumbering former Counts 2 through 8 as Counts 3 through 9. The proposed second amended complaint omitted the previous Count 9, consumer fraud, restated the previous Count 10, conversion, under the same number, and added a new Count 11, equitable estoppel based on appellees' assurances and misrepresentations regarding the likely outcome of the federal cases.

{¶ 11} Because appellant's proposed second amended complaint required leave of court, the parties eventually negotiated a stipulation providing that appellant's second amended complaint would be deemed filed, but certain limitations on damages would

apply.  Appellant's total damages under Counts 1 through 6 and 9 of the proposed second amended complaint, all relating to legal malpractice, would be limited to OSU's best offer of payment to settle appellant's claims prior to the dismissal of case No. 07-775, and all fees and expenses paid by appellant to appellees following presentation of that best offer.

{¶ 12}  Appellees filed a partial motion to dismiss certain claims on May 26, 2018. These included Count 7, fraud, Count 8, fraud, Count 10, conflict of interest, and Count 11, equitable estoppel.  Appellees argued these counts either failed to state a claim under Ohio law or had been already dismissed under the previous complaints. This motion was unopposed and granted by the trial court by entry on July 7, 2018. With the dissipation of appellant's fraud claims, the trial court also dismissed appellant's claim for punitive damages.

{¶ 13}  Appellees moved for summary judgment on appellant's remaining claims, all sounding in legal malpractice and all subject to the stipulated limitation of damages. Appellant filed his own "cross motion" for summary judgment, which the trial court allowed despite being filed after the case schedule cut off for dispositive motions.

{¶ 14}  On December 10, 2018, the trial court granted summary judgment in favor of appellees on all remaining claims.

{¶ 15}  The trial court first concluded that summary judgment was appropriate on all claims against defendants Ball and David T. Ball Law Office Co., LPA because appellant's expert, attorney Gary Reeve, had been unable to render an opinion regarding Ball's conduct.  The trial court observed that Reeve had been unable to distinguish Ball's actions from those of Rosenberg, and Reeve opined that Rosenberg appeared to be the lead decision maker during the course of representation.  The trial court concluded appellant had failed to provide any expert testimony that Ball's conduct fell below the standard of care in legal representation.

{¶ 16}  The trial court also concluded that Rosenberg was entitled to summary judgment because appellant conceded Rosenberg never gave him any assurances or guarantees of success prior to advising appellant to reject a $250,000 offer of settlement from OSU in September 2010.  The trial court observed appellant could not advance a legal malpractice claim on the theory that counsel owed appellant a duty to force appellant to accept an offer that appellant deemed unsatisfactory.  Finally, the trial court concluded that,

other than the payment of attorney fees, appellant's expert Reeve offered no evidence of damages proximately caused by Rosenberg's alleged deficient representation. While Reeve opined that Rosenberg had oversold the value of the case and his chances of success, failed to timely secure an expert, and made an error in dismissing case No. 07-775 without realizing this would chronologically curtail the claims available to appellant, Reeve also opined that appellant's underlying case was weak and no prejudice resulted to appellant in the prosecution of his case. The trial court also noted that Reeve had not offered an opinion on the amount of legal services rendered that did not merit compensation. The court concluded appellant had failed to provide the court with competent expert testimony establishing damages proximately caused by alleged malpractice and granted summary judgment for Rosenberg and Rosenberg & Ball Co., LPA.

## II. Assignments of Error

{¶ 17} Appellant appeals and assigns the following two assignments of error for our review:

> [I.] The Trial Court Erred in Granting Defendants' Motion for Summary Judgment on all of Plaintiff's claims where Plaintiff's expert Attorney Reeve and Defendants' own expert Attorney Gittes opine Defendant Rosenberg negligently dismissed the first suit, proximately causing Plaintiff money damages including lost raises (Gittes) and Rosenberg's further negligence cause[d] Plaintiff a $250,000 lost settlement (Reeve) and fees and costs paid to Defendants, up another $250,000, to prosecute Plaintiff's barred claims.
>
> [II.] The Trial Court Erred in Denying Plaintiff's Cross Motion for Partial Summary Judgment Defendant Rosenberg was negligent and proximately caused Plaintiff money damages in an amount to be determined at trial by jury.

(Emphasis sic.)

## III. Analysis

{¶ 18} Appellant's first assignment of error asserts the trial court erred in granting summary judgment in favor of the defendant attorneys and law firms. Summary judgment under Civ.R. 56(C) may be granted only when there remains no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, that conclusion being adverse to the party opposing the

motion.  *Tokles & Son, Inc. v. Midwestern Indemn. Co.*, 65 Ohio St.3d 621, 629 (1992), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64 (1978).  The moving party cannot discharge its burden under Civ.R. 56 simply by making conclusory assertions that the non-moving party has no evidence to prove its case.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  Rather, the moving party must point to some evidence that affirmatively demonstrates the non-moving party has no evidence to support each element of the stated claims.  *Id.*

{¶ 19} An appellate court's review of summary judgment is de novo.  *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29.   Thus, we conduct an independent review of the record and stand in the shoes of the trial court. *Abrams v. Worthington*, 169 Ohio App.3d 94, 2006-Ohio-5516, ¶ 11 (10th Dist.).  Our review grants no deference to the trial court's determination.   *Zurz v. 770 West Broad AGA, LLC*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).  As such, we have the authority to overrule a trial court's judgment if the record does not support any of the grounds raised by the movant, even if the trial court failed to consider those grounds.  *Bard v. Soc. Natl. Bank*, 10th Dist. No. 97APE11-1497 (Sept. 15, 1998).

{¶ 20} In general, a decision denying a motion for summary judgment is not a final appealable order.  While a denial of summary judgment is usually not a final appealable order, we may address and rule on such a denial when the trial court has entered final judgment in the matter and the case turns on undisputed facts and purely legal questions. *Celebrezze v. Netzley*, 51 Ohio St.3d 89, 90 (1990); *Jackson v. Columbus*, 156 Ohio App.3d 114, 2004-Ohi0-546, ¶ 9; *Holdren v. Garrett*, 10th Dist. No. 09AP-1153, 2011-Ohio-1095, ¶ 13; *Todd Dev. Co. v. Morgan*, 116 Ohio St.3d 461, 465, 2008-Ohio-87, ¶ 16 (approving grant of summary judgment in favor of non-moving party).

{¶ 21} The materials presented in support of, and opposition to, appellees' motion for summary judgment included the numerous pleadings in the present matter and the underlying employment cases in federal court, the depositions of the parties, requests for admissions, records of university proceedings, including university committee reports, university internal investigation reports, voluminous correspondence between parties, counsel, and university actors in the case, EEOC intake materials and subsequent EEOC

determinations, the competing expert reports prepared and submitted by the parties, and the expert depositions.

{¶ 22} On behalf of appellant, the expert evidence consisted of a detailed ten-page report prepared by Reeve, an experienced Columbus labor law attorney, concluding that Rosenberg, but not Ball, had committed malpractice on multiple occasions during their representation of appellant. While this report was not presented in affidavit form, the substance of the report was admitted through Reeves' sworn deposition. Counterbalancing this, appellees submitted the report of Frederick M. Gittes, also a qualified labor law attorney in central Ohio, who concluded Rosenberg's tactical choices and actions were, for the most part, defensible, and where they were not, any errors had not impacted the viability of appellant's claims. Gittes opined the only colorable adverse employment action suffered in the case was denial of appellant's tenure.

{¶ 23} The Supreme Court of Ohio has clearly set forth the elements of a legal malpractice action in Ohio: "To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall*, 77 Ohio St.3d 421, 427 (1997). In stating these elements, the Supreme Court expressly did not require the plaintiff to show that a claim would have succeeded in the absence of counsel's errors, but did not exclude that this would be necessary in some cases: "[n]aturally, a plaintiff in a legal malpractice action may be required, depending on the situation, to provide some evidence of the merits of the underlying claim." *Id.* at 428. Cases interpreting *Vahila* have emphasized that a malpractice claim must assert more than imperfect representation, it must establish a failure to conform to the applicable standard of care. *Advanced Analytics Labs, Inc. v. Kegler, Brown, Hill & Ritter, LPA*, 10th Dist. No. 01AP-1164, 2002-Ohio-3328, ¶ 47, quoting *2175 Lemoine Ave. Corp. v. Finco, Inc.*, 272 N.J.Super 478, 485 (1994) (" '*[a] lawyer, without express agreement, is not an insurer. * * * He is not answerable for an error of judgment in the conduct of a case or for every mistake which may occur in practice*' "). (Emphasis sic.)

{¶ 24} Evidence must establish a calculable financial loss with a causal connection to the defendant's conduct. *Endicott v. Johrendt*, 10th Dist. No. 99AP-935 (June 22, 2000). As such, mere speculatory damages will not give rise to recovery. *Id.* "A 'speculative inference' that [the defendants] advice * * * was the proximate cause of [plaintiff's] failure to recover * * *, or of any other nonspecified noncalculable loss is not sufficient to satisfy [plaintiff's] reciprocal burden to rebut the properly supported motion for summary judgment." *Nu-Trend Homes, Inc. v. Law Offices of DeLibera, Lyons & Bibbo*, 10th Dist. No. 01AP-1137, 2003-Ohio-1633, ¶ 42, citing *Endicott.* In a legal malpractice action, expert testimony is normally necessary to establish both the standard of care and that the attorney accused of malpractice failed to conform therewith, as well as the attorney's conduct was the proximate cause of the damage or loss claimed by the plaintiff client. *Id.* at ¶ 35, citing *Chutes v. Larrimer & Larrimer*, 10th Dist. No. 96APE08-997 (Mar. 18, 1997); *Turner v. Carter*, 5th Dist. No. 99 CA 231 (May 14, 2001). When the moving party presents competent expert testimony in support of a motion for summary judgment, the non-moving party must, if the case demands expert testimony, as most legal malpractice actions will present, similarly qualified expert testimony to rebut the moving party's expert and create a genuine issue of material fact regarding the standard of care and failure to conform thereto by the defendant attorney. *Nu-Trend Homes* at ¶ 45-50, 56-59.

{¶ 25} Appellees' motion for summary judgment expressly and succinctly stated that a failure of appellant to present sufficient expert testimony was the basis for which summary judgment was appropriate in the case: "Defendants identified Attorney Fred Gittes as their expert and Gittes specifically rendered an opinion addressing the standard of care and finding that the defendants met that standard. But this is not a motion seeking summary judgment based on a battle of the experts, rather it is based on plaintiff's expert's failure to offer testimony that qualifies for such a battle." (Mot. for Sum. Jgmt. at 2, fn. 3.) As a result, this court's task on appeal is to determine, first, whether the issues in the case were of the nature to require expert opinion to assess the conduct of the attorney defendants, and second, whether Reeve's report provides the requisite particulars to create a genuine issue of material fact and preclude summary judgment.

{¶ 26} With respect to the first question, no party disputes that the facts of the underlying employment case, and the conduct of the attorneys in prosecution of it, are of a

nature to require expert opinion to assess that conduct.  We further note there is no dispute that both attorneys Reeve and Gittes are fully qualified to render an opinion regarding the malpractice issues in the case.

{¶ 27} We begin by noting that appellant's reply brief on appeal expressly states "[a]ppellant waived any appeal as to Defendants [sic] Ball."  (Reply Brief at 6.)  This reflects the fact that appellant's expert was unable to reach a conclusion with respect to Ball's conduct after he entered the case through association with Rosenberg.  We accordingly find that appellant does not allege error on the part of the trial court in granting summary judgment in favor of defendants David T. Ball, Esq., and David T. Ball Law Office Co., LPA, and that aspect of the trial court's judgment must be affirmed.

{¶ 28} We next note that, in stipulating to the extent of damages in order to procure defendants' non-opposition to appellant's proposed second amended complaint, appellant expressly stipulated that the following items would be excluded from damages proximately caused by the alleged legal malpractice:

> Now come the parties and stipulate as follows with respect to the Plaintiff's Second Motion for Leave to File a Second Amended Complaint:
>
> 1) Plaintiff's total damages sought under Counts One – Six and Nine of the proposed Second Amended Complaint is The Ohio State University's best offer of payment to settle Plaintiff's claims prior to the dismissal of Plaintiff's complaint in Case 07-775 (to be determined by the jury, absent a dispute of material fact), and the sum total of fees and expenses paid by Plaintiff to Defendants following the presentation of that best offer of payment.
>
> 2) Plaintiff's proposed Second Amended Complaint does not seek damages that would flow from alleged malpractice by Defendants with regard to the prosecution of the lawsuits and administrative claims identified within the proposed Second Amended Complaint, whether characterized as the loss of a potential verdict, award, employment status accommodation (including grant of tenure), or other benefit that could have been awarded in such lawsuits and administrative claims, or those damages characterized as flowing from the failure to secure such a verdict, award, employment status accommodation, or other benefit including, but not limited to, loss of professional advancement, loss of reputation, loss of

tenure, loss of income, and mental anguish and loss of enjoyment of life.

3) While subject to the provisions of ¶2 of this stipulation, this stipulation does not otherwise limit the damages allowable under Ohio law with respect to the allegations asserted by Plaintiff in Counts Seven, Eight, Ten, and Eleven.

4) The parties agree that this stipulation is not a waiver of Defendants' rights to move to strike or move to dismiss certain counts of Plaintiff's proposed Second Amended Complaint in response to its filing.

5) The parties agree that this stipulation is not a waiver of Defendants' right to contest the entitlement to, or amount of, any damages claimed by Plaintiff.

6) Subject to the above, the parties agree that the Court should deem the Plaintiff's proposed Second Amended Complaint filed as of the date of filing of this stipulation, with Defendants to move or plead to same within 14 days.

(Emphasis sic.)  (May 5, 2017 Stip.)

{¶ 29} Based on the stipulation, appellant's extensive argument on appeal that Rosenberg should have more strongly urged his client to accept the September 2010 offer of $250,000 to settle is unavailing,[1] since this potential settlement is expressly excluded by the stipulation that recoverable damages would be limited to the best offer of payment to settle "prior to the dismissal of Plaintiff's Complaint in Case 07-775 [on October 16, 2009]." (Stip. at 1.)

{¶ 30} As a result, appellant was held in the trial court to present expert testimony establishing a standard of care and a breach of that standard by Rosenberg on the following damages alleged in the proposed second amended complaint:  Malpractice in connection with the dismissal of the first federal case, and loss of opportunity to settle that case prior to dismissal or prosecute the claims therein because they were time-barred from refiling in the second federal case; malpractice with respect to settle negotiations generally;

---

[1] We note as well that the second count in appellant's proposed second amended complaint addresses alleged negligence regarding settlement negotiations which took place prior to dismissal of case No. 07-775. (*See* ¶ 24 and 29 Second Amended Compl.) The September 2010 offer of $250,000 took place after the dismissal of case No. 07-775, and the complaint does not allege negligence with regard to settlement negotiations after the dismissal of case No. 07-775.

malpractice for failure to recognize that the second federal action was hopelessly limited by the loss of claims and defendant conduct now time-barred by dismissal of the first federal action, and compounded malpractice through pursuit of a hopeless appeal to the Sixth Circuit; malpractice arising from the joint representation of appellant's fellow-plaintiffs, which created a conflict of interest whereby Rosenberg could not effectively represent appellant's interests; and misleading factual representations forming a basis for equitable estoppel due to appellant's reasonable reliance on those representations in making his strategic choices throughout the state, federal, and administrative proceedings in the matter. For all of these, appellant was held to present damages only in the form of foregone settlement offers during the pendency of the first federal case, and excess fees and costs paid out of pocket by appellant in pursuit of the futile second federal suit and subsequent appeal to the Sixth Circuit.

{¶ 31} We first address the adequacy of Reeve's expert testimony with respect to the assertion that Rosenberg failed to sufficiently advocate that appellant accept settlement offers. The focus of Reeve's opinion was on appellant's rejection of a $250,000 offer in September 2010. Again, this has been stipulated away in connection with the trial court's grant of leave to file a proposed second amended complaint. While Reeve does opine that the first federal lawsuit was tenuous at best, and that neither Rosenberg's changes in strategy in the course of prosecution of the first federal action, nor the dismissal, were the proximate cause of any damages because of favorable outcome was unlikely:

> Q. Does this change in strategy or focus and/or errors in strategy that you allege have any proximate cause with regard to the outcome of the case, that is, the granting of motion for summary judgment?
>
> A. I don't think so, no.
>
> Q. And put differently, had those alleged errors or changes in focus not been made, you think the result would have likely been granting of a motion for summary judgment on behalf of Ohio State?
>
> A. Probably.
>
> * * *

> Q. Okay. Is this alleged error the proximate cause of the granting of the summary judgment against Dr. Vazquez?
>
> A. No.

(Reeve Depo. at 102-03.)

{¶ 32} In the same phase of deposition, Reeve also testified regarding the alleged conflict due to simultaneous representation of three plaintiffs in the case. Reeve stated he had "seen no hard evidence" that the conflict created any prejudice to appellant in the prosecution of his own case. (Reeve Depo. at 106.)

{¶ 33} With respect to all his assertions of shortcomings in representation, Reeve generally admitted that his assessment of Rosenberg's conduct was not based on a developed standard of care: "In developing the criticisms that you've expressed of Mr. Rosenberg, are you basing those on any written standards of conduct?" Reeve answered: "No." (Reeve Depo. at 121.)

{¶ 34} Finally, with respect to Rosenberg's failure to adequately impress appellant with the necessity to settle the case at various points, Reeve did not testify regarding any settlement offers accepted and rejected by appellant prior to termination of the first federal case. Most of the discussion centers on appellant's rejection of the $250,000 settlement offer in September 2010. This is outside the purview of the acceptable damages, and cannot be proximately linked to any alleged malpractice by Rosenberg during the prosecution of the first case. Without expert testimony regarding the nature of any settlement offers and the advisability of accepting them, Reeve offered no expert opinion that could sustain the remaining causes of action in the proposed second amended complaint.

{¶ 35} Moreover, Reeve's proposed standard of care to be applied to attorneys in advising clients to settle is inaccurate. Reeve proposed that an attorney is required to "take over the situation" and "go as far as needed" to pressure a client to accept a settlement that the attorney views as beneficial to the client. (Reeve Depo., Ex. A.) This is not the standard in Ohio, and Reeve cited no legal authority for such a standard. Ohio Rules of Professional Conduct 1.2, Scope of Representation and Allocation of Authority between Client and Lawyer, states that "[a] lawyer shall abide by a client's decision whether to settle a matter." The comment to that section is equally clear: "[t]he decisions specified in division (a), such as whether to settle a civil matter, must also be made by the client." Whether the client's

expectations are realistic or not, the attorney is bound by the client's decision. *State v. Cowans*, 87 Ohio St.3d 68, 80-81 (1999).

{¶ 36} Although the present assessment of summary judgment must focus on Reeve's report, we note appellant acknowledged that throughout litigation, Rosenberg had advised him the outcome was uncertain and no specific estimation of success or failure could be made in a case. (*See, e.g.*, Seoane-Vazquez Depo. Ex. 41, 43.)

> Q. At any discussion with Mr. Rosenberg or Mr. Ball regarding settlement, did they indicate to you that ultimately the decision was up to you as to whether you should accept or reject a settlement?
>
> A. It was implicit.
>
> Q. And by that you mean you understood that ultimately you were the one to make that decision?
>
> A. Yes."

(Seoane-Vazquez Depo. at 738-39.)

{¶ 37} In summary, the expert report and testimony provided by appellant notes numerous deficiencies in Rosenberg's conduct of the various cases representing appellant. That expert opinion does not, however, establish the correct standard of care with respect to attorney advice to a client regarding settlement. It also lacks particulars as to damages incurred by appellant in rejecting settlement offers or curtailing the pursuit of hopeless litigation. In the absence of an established standard of care, the experts opinion that counsel should have prevailed more strongly upon his client to accept settlement offers, the extent of which are not developed in the record, is insufficient to maintain the cause of action for legal malpractice. Where damages are quantifiable and measureable, such as the fees and expenses incurred by appellant in pursuing the second federal action, the expert's opinion again fails to elaborate a standard of care and, therefore, cannot set forth a cognizable breach supporting an award of such damages, even if proximate cause is less tenuous for such damages. As a result, we find the trial court did not err in granting summary judgment for all defendants in this matter, and appellant's first assignment of error is overruled.

{¶ 38} Appellant's second assignment of error asserts the trial court erred in declining to grant summary judgment in his favor. Based on our assessment of the evidence in support of and opposition to summary judgment in favor of appellees, appellant's second assignment of error is necessarily overruled as well.

## IV. Conclusion

{¶ 39} In conclusion, appellant's two assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

BROWN and SADLER, JJ., concur.

––––––––––––––––