**[Cite as *Resor v. Dicke*, 2023-Ohio-4087.]**

## IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

ANTHONY RESOR, ET AL.,

    PLAINTIFFS-APPELLANTS,

    CASE NO. 2-22-28

    v.

GLORIA A. DICKE, ET AL.,

    O P I N I O N

    DEFENDANTS-APPELLEES.

Appeal from Auglaize County Common Pleas Court
Civil Division
Trial Court No. 2022-CV-109

Judgment Reversed and Cause Remanded

Date of Decision:  November 13, 2023

**APPEARANCES:**

    *Brent L. English* **for Appellants**

    *Lindsay M. Johnson* **for Appellees**

**MILLER, P.J.**

{¶1} Plaintiffs-Appellants, Anthony and Kayla Resor (collectively, the "Resors"), appeal the November 17, 2022 judgment issued by the Auglaize County Court of Common Pleas dismissing their amended complaint against Defendants-Appellees, Gloria A. Dicke, Esq. ("Dicke") and her employer, The Hearn Law Office. The Resors had filed claims against both Appellees for legal malpractice and against The Hearn Law Office for respondeat superior. The Resors argue that the trial court erred in granting the Appellees' motion to dismiss their claims. For the reasons that follow, we reverse the trial court's judgment dismissing the Resors' amended complaint.

## I. FACTS AND PROCEDURAL HISTORY

### A. Amended Complaint

{¶2} The Resors filed their Amended Complaint on October 3, 2022 setting forth numerous factual allegations, relevant portions of which are set forth below.

{¶3} The Resors are the biological parents of three minor children. Prior to the events laid out below, no children's services agency had ever been involved with the Resors or their children. However, Kayla Resor's mother, Bonnie McClurg ("McClurg"), had a long-standing antagonistic relationship with Kayla's husband, Anthony Resor ("Tony"). Unbeknownst to the Resors at the time, McClurg claimed that Tony was being violent toward Kayla and their children. McClurg began

interacting with an Allen County Children Services Board caseworker named Stephen Jenkins ("Jenkins"). Jenkins called Kayla and disparaged Tony, claiming that Tony had an extensive criminal record and that she and her children were in jeopardy. Confused, Kayla agreed to meet with Jenkins on May 3, 2021, where he manipulated her into saying things that were not true and interviewed each of the children.

{¶4} On May 4, 2021, Jenkins informed the Allen County Juvenile Court that he intended to take the children from their parents' custody. The next day, an Allen County Juvenile Court magistrate issued *ex parte* emergency custody orders for each of the children. Because the children were with McClurg for the day, the agency directed McClurg to keep them from their parents and served a notice on the Resors' door that their children had been removed.

{¶5} On May 5, 2021, the magistrate conducted a hearing to determine whether there was probable cause for the emergency orders. Jenkins, represented by an assistant county prosecutor, and the Resors, who had no time to engage counsel and therefore appeared *pro se*, attended the hearing. Tony informed the magistrate that the allegations against him and Kayla were false. Kayla likewise informed the magistrate that the allegations against them were false and that she and Tony were good parents. The magistrate decided there was sufficient probable cause for continued shelter care and maintained the placement of the children with McClurg. On May 6, 2021, the assistant county prosecutor filed three identical

complaints, alleging the children's condition or environment warranted the State to assume guardianship of the children.

{¶6} On May 7, 2021, the Resors entered into an attorney-client relationship with Dicke from The Hearn Law Offices. The Resors sought advice about how to counter the agency's actions. The Resors told Dicke about their suspicion that McClurg had orchestrated the events. Dicke started representing them in the child dependency proceedings stemming from the three complaints.

{¶7} At the adjudicatory stage of the proceedings, the Resors objected to the proposed case plan the agency had filed in connection with the complaints. The Resors' Amended Complaint alleges Dicke did not make any discovery requests or seek depositions in preparation for the adjudication hearing, including that she did not investigate McClurg's involvement and interactions with Jenkins. Additionally, the Amended Complaint alleges that, leading up to the adjudication hearing, Dicke did not subpoena any witnesses, prepare the Resors to testify, or prepare to address the legal issues presented. Thus, the Resors allege Dicke did not make sufficient efforts to "determine the facts on which the agency would rely at the adjudicatory hearing, determine whether there were witnesses who could rebut and/or explain factual claims, become thoroughly aware of the issues and facts in order to competently and effectively cross-examine the agency's witnesses, assess evidentiary issues which likely would arise including hearsay and potential hearsay exceptions, prepare and file motions in limine where appropriate, and properly

prepare Tony and Kayla Resor to testify on their own behalf." (Amended Complaint at ¶ 62). On June 7, 2021, the magistrate conducted an adjudication hearing on the complaints. At that hearing, Dicke allegedly did not: object to clearly objectionable testimony offered by Jenkins (including speculation and hearsay statements about what the children allegedly said to him); challenge whether the agency had made reasonable efforts to prevent the children's removal from their parents; effectively cross-examine any witness; call her clients to testify; call any witnesses; or offer any documents into evidence.

{¶8} On June 9, 2021, based on the adjudication hearing, the magistrate found all three children were dependent, by clear and convincing evidence pursuant to R.C. 2151.04. Dicke did not request findings of fact and conclusions of law or file objections to the magistrate's decision. She also did not advise the Resors of their options, explain the consequences of foregoing objections, or explain why she had not filed objections.

{¶9} On July 20, 2021, the magistrate conducted a dispositional hearing. The Amended Complaint asserts that, at this hearing, Dicke did not: directly challenge the contention that domestic violence had occurred in the Resor home; directly challenge the "bizarre claims about [Tony] killing animals and being paranoid"; call any witness to establish the fact that the Resors had been evaluated for mental health concerns and found to be perfectly normal; call any witness to establish the fact that, in accordance with the case plan, Tony had completed anger management classes

and the Resors had completed parenting classes; make any showing that the proper disposition was to return the children to their parents and give the agency protective supervision for a period of time; or demonstrate the agency had not taken reasonable efforts to prevent continued removal of the children from the Resor's home. On July 22, 2021, "based upon the extremely limited evidence presented, [the magistrate concluded] that temporary custody of the children should remain with McClurg, and that Tony and Kayla would have somewhat extended supervised parenting time." (Amended Complaint at ¶ 86). Once again, Dicke is alleged to have compounded her mistakes by not filing objections to the magistrate's decision, severely compromising the Resors' ability to appeal any subsequent judgment, and once more did not advise the Resors of their right to file objections to the magistrate's dispositional order and seek relief from the trial court, explain the consequences of foregoing objections, or explain why she had not filed objections. On September 14, 2021, the trial court journalized a judgment entry approving and affirming the magistrate's decision.

{¶10} Due to Dicke's alleged professional negligence, the Resors had to hire alternate legal counsel to challenge the agency in order to regain physical custody of their children. Following additional legal proceedings, the three dependency cases were dismissed. The Resors' children were returned to them on February 25, 2022 (297 days after initially losing custody), but the Resors had expended funds to engage alternate legal counsel and, by then, the Resors had been unnecessarily

deprived of their children for more than 200 additional days because of Dicke's alleged malpractice.

**{¶11}** The Resors alleged that, if Dicke had competently represented them, then (1) "there would not have been a valid basis for a dependency finding and the children would have been returned following the [adjudication] hearing on June 7, 2021"; or, even if the magistrate had made the same dependency finding, (2) "the dispositional order following the [dispositional] hearing on July 20, 2[0]21 would have returned the children to their parents with at worst protective supervision by the agency." (Amended Complaint at ¶ 93).

### B. Appellees' Motion to Dismiss and the Trial Court's Order

**{¶12}** On October 17, 2022, Appellees filed a motion to dismiss the Amended Complaint, pursuant to Civ.R. 12(B)(6). On November 18, 2022, the trial court entered its order on the motion to dismiss, stating:

> In this case, [the Resors] fail to state an actionable legal malpractice claim where their Amended Complaint allegations, taken as true, fail to demonstrate any causal connection between the alleged negligence of Attorney Dicke and their claimed damages. Any determination as to whether the Juvenile Court would have reached a different decision in the underlying proceedings would be wholly speculative.

> The facts set forth in the Amended Complaint, taken as true, would not support a finding that the outcome of the Juvenile Court proceedings would have been different had Attorney Dicke employed different strategy. Such a finding would require speculation and conjecture given the nature of the proceedings.

(Nov. 18, 2022 Order). The trial court sustained the motion and dismissed the Amended Complaint. This appeal followed.

## II. ASSIGNMENTS OF ERROR

{¶13} Appellants raise a single assignment of error for our review:

**Assignment of Error**

**The trial court committed reversible error by granting a motion to dismiss where the complaint unquestionably stated a valid claim upon which relief could be granted.**

## III. DISCUSSION

{¶14} In their assignment of error, Appellants argue the trial court erred in granting Appellees' Civ.R. 12(B)(6) motion because the Amended Complaint met the applicable pleading standards and set forth a valid claim for legal malpractice upon which relief can be granted.

### A. Standard of Review

{¶15} "An order granting a Civ.R. 12(B)(6) motion to dismiss is subject to de novo review." *Perrysburg Twp. v. City of Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, ¶ 5.

### B. Applicable Law

#### i. Pleading standards and Civ.R. 12(B)(6) standards

{¶16} "A motion to dismiss for failure to state a claim upon which relief can be granted tests the sufficiency of the complaint." *Volbers-Klarich v. Middletown Mgt., Inc.*, 125 Ohio St.3d 494, 2010-Ohio-2057, ¶ 11. "Thus, the movant may not rely on allegations or evidence outside the complaint; such matters must be

excluded, or the motion must be treated as a motion for summary judgment." *Id.*; *see also* Civ.R. 12(B).

**{¶17}** "Ohio is a notice-pleading state." *Maternal Grandmother v. Hamilton Cty. Dept. of Job and Family Servs.*, 167 Ohio St.3d 390, 2021-Ohio-4096, ¶ 10. Consequently, the pleading party "is not required to prove his or her case at the pleading stage." *York v. Ohio State Hwy. Patrol*, 60 Ohio St.3d 143, 144-45, 573 N.E.2d 1063 (1991). Being a notice-pleading state "means that outside of a few specific circumstances, such as claims involving fraud or mistake, *see* Civ.R. 9(B), a party will not be expected to plead a claim with particularity." *Maternal Grandmother* at ¶ 10. Instead, Civ.R. 8 only requires that a pleading "contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Civ.R. 8(A). Additionally, "[a]ll pleadings shall be so construed as to do substantial justice." Civ.R. 8(F).

**{¶18}** In determining whether a Civ.R. 12(B)(6) motion should be granted, "we must accept as true all factual allegations in the complaint." *Sherman v. Ohio Pub. Emps. Retirement Sys.*, 163 Ohio St.3d 258, 2020-Ohio-4960, ¶ 17. "'Those allegations and any reasonable inference drawn from them must be construed in the nonmoving party's favor.'" *Id.*, quoting *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, ¶ 12. While *factual allegations* in the pleading must be accepted as true and construed in the pleading party's favor,

*unsupported legal conclusions*—even when cast as factual assertions—are not presumed to be true for purposes of the motion and are insufficient to withstand such a motion. *State ex rel. Martre v. Reed*, 161 Ohio St.3d 281, 2020-Ohio-4777, ¶ 12; *Mitchell v. Lawson Milk Co.*, 40 Ohio St.3d 190, 192-93, 532 N.E.2d 753 (1988). Ultimately, to grant a Civ.R. 12(B)(6) motion, "'it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought.'" *Sherman* at ¶ 17, quoting *Ohio Bur. of Workers' Comp.* at ¶ 12; *see also York* at 145 ("as long as there is a set of facts, consistent with the [pleading], which would allow the [pleading party] to recover, the court may not grant" a Civ.R. 12(B)(6) motion).

### ii. Legal malpractice claims

**{¶19}** "To establish a cause of action for legal malpractice based on negligent representation, a plaintiff must show (1) that the attorney owed a duty or obligation to the plaintiff, (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law, and (3) that there is a causal connection between the conduct complained of and the resulting damage or loss." *Vahila v. Hall*, 77 Ohio St.3d 421, 674 N.E.2d 1164 (1997), syllabus.

**{¶20}** Regarding the causation requirement in the third element, different standards of proof will apply depending on whether the theory of the claim places the merits of the underlying litigation directly at issue. *Environmental Network Corp. v. Goodman Weiss Miller, L.L.P.*, 119 Ohio St.3d 209, 2008-Ohio-3833, ¶ 14-

21; *McCarty v. Pedraza*, 2d Dist. Clark No. 2013-CA-42, 2014-Ohio-3262, ¶ 16. In cases where plaintiffs "arguably sustained damage or loss regardless of the fact that they would have been successful in the underlying matter(s) in question," the plaintiffs need only provide "some evidence of the merits of the underlying claim." *Vahila* at 427; *see also McCarty* at ¶ 17. On the other hand, the case-within-a-case doctrine applies when the plaintiffs' theory of the legal malpractice claim "places the merits of the underlying litigation directly at issue." *Environmental Network Corp.* at ¶ 18; *see also McCarty* at ¶ 18; *Eastminster Presbytery v. Stark & Knoll*, 9th Dist. Summit No. 25623, 2012-Ohio-900, ¶ 7. This standard requires plaintiffs to "establish that [they] would have been successful in the underlying matter." *Environmental Network Corp.* at ¶ 19; *see also McCarty* at ¶ 17. Under this standard, plaintiffs have "the burden of proving by a preponderance of the evidence that but for [defendant's] conduct, they would have received a more favorable outcome in the underlying matter." *Environmental Network Corp.* at ¶ 19. Such a standard is necessary in those cases in order to correspond with "the established rule that a plaintiff must establish by a preponderance of the evidence that defendant's actions were the proximate cause of plaintiff's losses." *Id.* at ¶ 20.

{¶21} Regarding damage or loss, "a client is entitled to compensation for damages proximately caused by [the] attorney's malpractice." *Rafferty v. Scurry*, 117 Ohio App.3d 240, 245, 690 N.E.2d 104 (12th Dist.1997). This can include, for example, fees incurred in connection with a subsequently-retained attorney's

representation in the underlying action if those fees were incurred to rectify, or attempt to rectify, the damage the defendant-attorney caused the client. *Id.* at 247.

### C. Analysis

**{¶22}** As an initial matter, the Amended Complaint in this case shows the case-within-a-case doctrine will apply. Similar to the scenario in *McCarty*, the Resors' legal malpractice claim links Dicke's conduct directly to their loss: the outcome of the custody proceedings (allegedly) would have been more favorable if Dicke had not (allegedly) breached her duty to them. *McCarty*, 2014-Ohio-3262, at ¶ 20; *see also Eastminster Presbytery*, 2012-Ohio-900, at ¶ 8 (applying the case-within-a-case doctrine where plaintiff claimed that, but for counsel's failure to include a properly authenticated document as an exhibit to a motion in the underlying case, it would have prevailed in the underlying case); *Environmental Network Corp.*, 2008-Ohio-3833, at ¶ 20 (the case-within-a-case doctrine applied because, to prove causation and damages, the plaintiffs had to establish that defendant's actions resulted in settling the case for less than plaintiffs would have received had the matter gone to trial). Here, the Resors claim that, but for Dicke's actions, their children would have been returned to them following the adjudicatory hearing (or, at worst, the dependency hearing) and they also would not have had to engage new counsel to attain that outcome.

**{¶23}** The Amended Complaint shows the Resors entered into an attorney-client relationship with Dicke; identifies instances when Dicke (allegedly) breached

the standard of care she owed to the Resors; and identifies how, as a proximate cause of those instances of (alleged) breach, the Resors were damaged or suffered loss. The Amended Complaint also identifies what would have happened if those instances of (alleged) breach had not happened, namely that the Resors would have received a more favorable outcome in the underlying matter by regaining custody of their children more than 200 days earlier than they did after engaging new counsel. Accepting all factual allegations in the Amended Complaint as true and construing any reasonable inferences drawn from them in the Resors' favor, the Amended Complaint sufficiently states a legal malpractice claim. *See, e.g., Sacksteder v. Senney*, 2d Dist. Montgomery No. 24993, 2012-Ohio-4452, ¶ 52-53, 65, 70 (reversing the trial court's dismissal of a legal malpractice claim; the complaint sufficiently stated a cause of action in alleging an attorney-client relationship, failures by the attorneys to properly advise plaintiffs, that plaintiffs would have been in a better financial position but for the attorneys' improper acts, and plaintiffs suffered financial damages as a result of the attorneys' failures); *Deutsche Bank Natl. Trust v. Gillium*, 151 Ohio Misc.2d 36, 2009-Ohio-2394, 907 N.E.2d 809, ¶ 9 (C.P.) (DeWine, J.) (denying a motion to dismiss a legal malpractice claim, pursuant to the "liberal standards for review of a complaint," where the complaint alleged defendant-attorney's actions included failing to meaningfully communicate with plaintiff and failing to file discovery).

**{¶24}** The Appellees' overarching argument is that the Resors "*cannot* demonstrate, without engaging in speculation and conjecture, that the outcome of the Juvenile Court proceedings would have been different had Attorney Dicke decided to make certain objections, present certain evidence, or employ different strategy." (Appellee's Brief at 12 (emphasis sic)).  However, at the pleading stage, some speculation is *inherent* in a claim for legal malpractice involving the case-within-a-case doctrine.  Such a claim is brought because the alleged more favorable outcome in the underlying matter *did not* happen; thus, whether it would have occurred is necessarily speculative.  But, analyzing that speculation and determining whether the plaintiffs have sufficiently proven their claim is best done after the parties have had the opportunity to gather evidence during discovery and is typically resolved at the summary judgment or trial stage.  *See, e.g., Pierson v. Rion*, 2d Dist. Montgomery No. CA23498, 2010-Ohio-1793, ¶ 28, 40 (granting summary judgment to defendant-lawyer on a legal malpractice claim because the plaintiff "presented no evidence beyond mere speculation that he would have obtained a more favorable outcome had" the lawyer not taken a particular action, thus failing to establish a causal connection between the action and any resulting damage or loss); *Burks v. Peck, Shaffer & Williams*, 109 Ohio App.3d 1, 6-7, 671 N.E.2d 1023 (8th Dist.1996) (reversing dismissal of legal malpractice claim; whether the attorney had a duty under the facts presented depended on the foreseeability of the injury and was "more appropriately tested using a motion for summary judgment rather than a

motion to dismiss"). The Resors acknowledge that it will be necessary in this case for them to offer expert testimony regarding Dicke's actions and inactions in order to establish the elements of their legal malpractice claim. (Appellant's Brief at 23-24).

{¶25} We do not find that, based on the allegations in the Amended Complaint, the asserted causal connection between Dicke's conduct and the Resors' loss is too speculative as a matter of law to sufficiently plead a legal malpractice claim. Further supporting this finding is the (alleged) fact that, after the Resors hired alternate legal counsel, they succeeded in having the three dependency cases dismissed and gained back custody of their children.

{¶26} In their brief, Appellees rely on the case *Franjesh v. Berg*, 9th Dist. Summit No. 17534, 1996 Ohio App. LEXIS 4345, 1996 WL 556899 (Oct. 2, 1996) to support their assertion: "[W]here a complaint's allegations as to damages would require a court to 'predict exactly how' a court would have handled a matter within its discretion, such as the allocation of pension or retirement benefits in dissolution proceedings, such complaint fails to state an actionable malpractice claim." (Appellee's Brief at 10). The *Franjesh* case does not support dismissing the Amended Complaint here. *Franjesh* did *not* involve a motion to dismiss; instead, it involved a motion for summary judgment. Thus, contrary to Appellees' assertion, the appellate court in *Franjesh* did not consider whether the complaint stated an actionable malpractice claim. Rather, the appellate court in *Franjesh* ruled that the

plaintiff did not overcome a summary judgment motion because she "has not provided *any evidence* that she would have obtained a more advantageous outcome" and "has not provided *any evidence* as to her alleged calculated damages other than her unsubstantiated claims." (Emphasis added.) *Franjesh*, 1996 WL 556899, at *6. Unlike *Franjesh*, because the case here is still at the pleadings stage, the parties have not had a chance to obtain and provide evidence yet.

{¶27} By the same token, Appellees assert: "Moreover, Ohio law is clear that a plaintiff alleging legal malpractice must prove 'a calculable financial loss with a causal connection to the defendant's conduct.'" (Appellee's Brief at 9-10, quoting *Seoane-Vazquez v. Rosenberg*, 10th Dist. Franklin No. 19AP-16, 2019-Ohio-4997, ¶ 24). Not only did *Seoane-Vazquez* involve a motion for summary judgment rather than a motion to dismiss, but, relatedly, the full quote reads: "*Evidence must establish* a calculable financial loss with a causal connection to the defendant's conduct." (Emphasis added.) *Seoane-Vazquez* at ¶ 24. In fact, tellingly, the court in *Seoane-Vazquez* in that same paragraph explains: "In a legal malpractice action, expert testimony is normally necessary to establish both the standard of care and that the attorney accused of malpractice failed to conform therewith, as well as the attorney's conduct was the proximate cause of the damage or loss claimed by the plaintiff client." *Id.* Again, the case here is still at the pleading stage. Appellees are confusing pleading and motion to dismiss standards with standards from latter stages in the case. *Sacksteder*, 2012-Ohio-4452, at ¶ 65, 70 (explaining the

procedural posture "was simply a motion [to dismiss] to determine if the case could proceed to discovery").

**{¶28}** In *Sacksteder*, for example, the attorney malpractice claim arose from a failed sale of one business to another, where the same attorneys had represented both sides of the transaction. *Sacksteder*, 2012-Ohio-4452, at ¶ 4. The complaint alleged the attorney-defendants failed to properly advise client-plaintiffs in the deal, plaintiffs would have enjoyed a better financial position without the attorney-defendants' alleged improper failures, and plaintiffs suffered financial damages as a result of the attorney-defendants' failures. *Id.* at ¶ 4, 53. In their motion to dismiss, the attorney-defendants argued the plaintiffs could not show the proximate cause of the alleged damages. *Id.* at ¶ 56. Similar to Appellees' argument here, their argument indicated that causation was too speculative, stressing that the other company decided not to go through with the deal "*likely* based on [plaintiff company's] financial condition or other factors which would have influenced [other company] regardless of the [attorney-defendants'] involvement in those discussions." (Emphasis sic.) *Id.* at ¶ 56. The appellate court rejected this argument and reversed the trial court's dismissal of the complaint. *Id.* at ¶ 57-58, 70. The appellate court explained the analysis of proximate cause and damages was "not a matter of proof at the pleading stage; it is a matter for trial or, perhaps, for summary judgment if the facts are undisputed." *Id.* at ¶ 57.

{¶29} In their brief, the Appellees also argue that Dicke's actions all were "legitimate litigation strategy." While this claim may turn out to be true, it is premature to make that determination based on the allegations in the Amended Complaint. Again, a party moving to dismiss a complaint may not rely on allegations or evidence outside the complaint, and the reviewing court must accept as true all factual allegations in the complaint and construe any reasonable inferences drawn from them in the nonmoving party's favor. It is not obvious from the face of the complaint that Dicke's actions all were legitimate litigation strategy such that the legal malpractice claim must necessarily fail.

{¶30} In summary, the Resors are "not required to prove [their] case at the pleading stage." *York*, 60 Ohio St.3d at 144-45. Accepting as true all factual allegations in the Amended Complaint and construing in the Resors' favor any reasonable inferences drawn from them, it does not "appear beyond doubt that [the Resors] can prove no set of facts in support of the claim that would entitle [them] to the relief sought." *Sherman*, 163 Ohio St.3d 258, 2020-Ohio-4960, at ¶ 17. Therefore, Appellees' motion to dismiss was improperly granted. In ruling as we do, we express no opinion on the merits or even probability of success of the Resors' claims. Instead, we simply determine that the Amended Complaint survives the motion to dismiss.

## IV. CONCLUSION

**{¶31}** For the foregoing reasons, Appellants' assignment of error is sustained. Having found error prejudicial to the Appellants in the particulars assigned and argued, we reverse the judgment of the Auglaize County Court of Common Pleas. We remand the cause to the trial court for further proceedings.

*Judgment Reversed and*
*Cause Remanded.*

**WILLAMOWSKI and ZIMMERMAN, J.J., concur.**

**/hls**