**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*Sherman v. Ohio Pub. Emps. Retirement Sys.*, **Slip Opinion No. 2020-Ohio-4960.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4960

SHERMAN, APPELLEE, *v.* OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Sherman v. Ohio Pub. Emps. Retirement Sys.*, Slip Opinion No. 2020-Ohio-4960.]**

*Ohio Public Employees Retirement System ("OPERS")—R.C. 145.38(B)(1)—R.C. 145.384—Reduction of health-insurance subsidy for a retiree reemployed by a state employer—Equal-protection claim—Civ.R. 12(B)(6) motion to dismiss—Retiree alleged sufficient facts to negate OPERS's argument that subsidy reductions for all OPERS-covered reemployed retirees are rational—OPERS's claim that it would incur additional costs in identifying retirees reemployed by an employer other than a state is not a sufficient rational basis requiring dismissal of retiree's complaint.*

(No. 2019-0373—Submitted February 26, 2020—Decided October 22, 2020.)

APPEAL from the Court of Appeals for Franklin County, No. 18AP-181, 2019-Ohio-278.

_____

**O'CONNOR, C.J.**

{¶ 1} This case involves a subsidy to offset part of the cost of health insurance that appellant, Ohio Public Employees Retirement System ("OPERS"), provides to retirees receiving an OPERS pension. OPERS reduces the subsidy of any retiree who is reemployed by a public employer that is a member of the OPERS network. Appellee, Jeffrey P. Sherman, filed this class-action suit against OPERS arguing that such subsidy reductions violate the Equal Protection Clause of the Ohio Constitution, Article I, Section 2. The trial court dismissed the action as permitted by Civ.R. 12(B)(6), holding that Sherman failed to state a claim upon which relief could be granted. The Tenth District Court of Appeals reversed and remanded for further proceedings. We hold that the court of appeals correctly determined that Sherman has stated a claim under Civ.R. 12(B)(6). We therefore affirm.

## I. Relevant Background

{¶ 2} OPERS is the largest of Ohio's five public retirement systems.[1] Employees of over 3,500 public employers across the state are members of OPERS. R.C. 145.03. *See* https://www.opers.org/members/employer-search/ (accessed Aug. 12, 2020) [https://perma.cc/CVL2-TQWF]. Employees participating in OPERS are eligible for retirement, disability, and survivor benefits. OPERS also offers its retirees health insurance, R.C. 145.58(B), including medical, prescription-drug, vision, and dental plans.

{¶ 3} Sherman alleged in his complaint that he was previously employed by the Ohio Department of Taxation, a public employer within the OPERS network.

---

1. Ohio's other public retirement systems are the Highway Patrol Retirement System, the Police and Fire Pension Fund, the School Employees Retirement System, and the State Teachers Retirement System. *See* https://ohio.gov/wps/portal/gov/site/government/resources/public-retirement-systems (accessed Aug. 12, 2020) [https://perma.cc/3P5Z-SJVU].

2

He retired from his position with Department of Taxation in May 2009 and began receiving his pension from OPERS along with a subsidy to offset the cost of his coverage under an OPERS-provided health-insurance plan. In May 2010, the Regional Income Tax Agency ("RITA"), which is also a public employer within the OPERS network, hired Sherman for a part-time position.

{¶ 4} Sherman continues to receive his pension while he is reemployed, subject to certain requirements not relevant here. R.C. 145.38(B). But he does not accrue new or additional pension benefits while employed by RITA; although he and RITA contribute to OPERS, those funds will be returned to Sherman as either a lump sum or in an annuity. *See* R.C. 145.38(B)(1) and (D)(1) (permitting an OPERS retiree to be reemployed with a public employer and requiring both the retiree and the employer to contribute to OPERS but stating that the retiree is not a member of OPERS upon reemployment); R.C. 145.384(B)(2) (describing the refund of a reemployed retiree's contributions).

{¶ 5} In July 2017, Sherman filed suit against OPERS, asserting a claim under the Equal Protection Clause of the Ohio Constitution. Sherman asserts that in reducing the subsidy for the health-insurance premium, OPERS treats retirees like him, who are reemployed in an OPERS-covered position, differently from similarly situated employees.

{¶ 6} Specifically, Sherman alleges that he is similarly situated to OPERS retirees who are reemployed by an employer that is not part of the OPERS network. When a retiree is reemployed in an OPERS-covered position, the subsidy is reduced, but when a retiree is reemployed in a non-OPERS-covered position, the subsidy is not reduced. Sherman alleges that there is no rational basis for treating him differently from similarly situated employees and that OPERS's reduction of his subsidy violates his rights under Ohio's Equal Protection Clause.

{¶ 7} Sherman alleges that OPERS withheld $74 per month from his health-insurance subsidy each month between January 1, 2016, and the filing of this suit

in July 2017. If he had received the full subsidy to which he was entitled in 2016, he would have had to pay only $32.54 per month for his health insurance. But OPERS's withholding of $74 from his monthly subsidy caused him to pay $106.54 per month instead. Similarly, if he had received the full subsidy in 2017, he would have had to pay $118 per month for his premiums, but OPERS's withholding of $74 from his monthly subsidy caused him to pay $192 per month instead.

{¶ 8} Sherman is also pursuing this claim on behalf of the following class: "All OPERS retirees for whom OPERS withheld a portion of their health-insurance premium monies from January 1, 2016, to the present due to their re-employment in an OPERS-covered position." He seeks an order declaring that OPERS's reduction of the subsidy based solely on whether a retiree is reemployed in an OPERS-covered position is unconstitutional. He also seeks restitution in the form of an order that OPERS disgorge all monthly premium subsidies that have been unlawfully withheld from him and the rest of the class.

{¶ 9} The trial court dismissed Sherman's complaint for failure to state a claim upon which relief can be granted under Civ.R. 12(B)(6). It held that Sherman had failed to allege that a group of OPERS retirees existed who were similarly situated to him but were treated differently. It found that the group identified by Sherman as receiving different treatment—retirees reemployed in non-OPERS-covered positions—is not, in fact, similarly situated to him, because Sherman and the class are "double dipping," that is, they are receiving both a public pension and a taxpayer-supported salary, but retirees reemployed in non-OPERS-covered positions are not receiving both benefits. The trial court also held that Sherman had failed to allege that there was no rational basis for OPERS's reduction of the subsidy. It accepted OPERS's arguments that reducing the subsidy for retirees who are reemployed with employers in the OPERS network is intended "to discourage double-dipping to protect the public fisc" and that the state has a legitimate interest in pursuing such a cost-saving measure.

4

{¶ 10} The Tenth District Court of Appeals reversed. It held that Sherman and the class are similarly situated to OPERS retirees who are reemployed in non-OPERS positions. 2019-Ohio-278, 129 N.E.3d 974, ¶ 22. It first noted that Ohio does not have a policy against double dipping nor does it prohibit retirees from receiving their pension while reemployed in public positions, *id.* at ¶ 20; instead, retirees receiving an OPERS pension are expressly allowed to be reemployed by a public employer, R.C. 145.38(B)(1). It then held that OPERS retirees who are reemployed in OPERS-covered positions are similarly situated with regard to retirees who are reemployed in non-OPERS-covered positions in all relevant respects because both groups receive only a single stream of benefits from OPERS: a pension. *Id.* at ¶ 21. The fact that retirees reemployed in an OPERS-covered position also receive a taxpayer-supported salary and benefits is not a relevant distinction because the salary and benefits are paid by the new employer, not OPERS, and would be paid by the new employer regardless of whether the employee is an OPERS retiree. *Id.* In other words, the salary and benefits would still be paid if the position had been filled by a person who has not yet retired.

{¶ 11} The Tenth District also rejected the trial court's holding that Sherman failed to allege that there was no rational basis for distinguishing between OPERS retirees reemployed in an OPERS-covered position and those in a non-OPERS-covered position. It held that although preserving public money can be a legitimate purpose, " 'when preserving state money is accomplished by treating an individual in an arbitrary manner, it is not a rational reason to classify.' " 2019-Ohio-278, 129 N.E.3d 974, at ¶ 27, quoting *Adamsky v. Buckeye Local School Dist.*, 73 Ohio St.3d 360, 362, 653 N.E.2d 212 (1995). Here, the state "did not provide enough information" in its motion to dismiss to explain how reducing the health-insurance subsidy it provides to retirees reemployed in an OPERS-covered position is rationally related to its goal of preserving public money. *Id.* at ¶ 29. Without

that, Sherman could not attempt to meet his obligation of negating every conceivable basis for OPERS's action. *Id.* at ¶ 30.

{¶ 12} OPERS appealed to this court, raising one proposition of law: "Ohio's Equal Protection Clause does not demand that OPERS treat retirees employed in OPERS-covered positions the same as all other reemployed retirees." We granted the state's request for discretionary review. 155 Ohio St.3d 1467, 2019-Ohio-2100, 122 N.E.3d 1302.

## II. Analysis

{¶ 13} We review de novo a decision granting a motion to dismiss under Civ.R. 12(B)(6). *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5.

### A. Background Law

{¶ 14} Ohio's Equal Protection Clause is contained in Article 1, Section 2 of the Ohio Constitution. It provides:

> All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly.

As a general matter, this provision requires that the government treat all similarly situated persons alike. *See McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 6. But not all claims brought under this clause are judged in the same way. When a claim involves a fundamental right or a suspect class, the government's action is subject to a higher level of scrutiny. *See Adamsky*, 73 Ohio St.3d at 362, 653 N.E.2d 212. But when no such right or class is involved,

the government's action is subject to rational-basis review; it will be upheld "if it is rationally related to a legitimate government interest," *State v. Williams*, 126 Ohio St.3d 65, 2010-Ohio-2453, 930 N.E.2d 770, ¶ 39, citing *Eppley v. Tri-Valley Local School Dist. Bd. of Edn.*, 122 Ohio St.3d 56, 2009-Ohio-1970, 908 N.E.2d 401, ¶ 15. The parties agree that this case does not implicate a right deemed to be fundamental or involve a suspect classification, and that the rational-basis test therefore applies in this case.

{¶ 15} The basic framework for the rational-basis test is well established:

" '[A] State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality." *Lindsley v. Natural Carbonic Gas Co*. [1911], 220 U.S. 61, 78 [31 S.Ct. 337, 55 L.Ed. 369].' " *State ex rel. Nyitray v. Indus. Comm*. (1983), 2 Ohio St.3d 173, 179, 2 OBR 715, 443 N.E.2d 962 (Krupansky, J., dissenting), quoting *Dandridge v. Williams* (1970), 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491.

The rational-basis test involves a two-step analysis. We must first identify a valid state interest. Second, we must determine whether the method or means by which the state has chosen to advance that interest is rational. A statute will not be held to violate the Equal Protection Clause, and this court will not invalidate a plan of classification adopted by the General Assembly, unless it is clearly arbitrary and unreasonable. Thus, provided that the statute is rationally related to a legitimate government interest, it will be upheld.

(Citations omitted and brackets sic.) *McCrone* at ¶ 8-9.

{¶ 16} Importantly, however, "[u]nder the rational-basis standard, a state has no obligation to produce evidence to sustain the rationality of a * * * classification." *Columbia Gas Transm. Corp. v. Levin*, 117 Ohio St.3d 122, 2008-Ohio-511, 882 N.E.2d 400, ¶ 91. A state action may be based on " 'rational speculation unsupported by evidence or empirical data.' " *State v. Thompson*, 95 Ohio St.3d 264, 2002-Ohio-2124, 767 N.E.2d 251, ¶ 27, quoting *Fed. Communications Comm. v. Beach Communications, Inc.*, 508 U.S. 307, 315, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). The plaintiff "bears the burden to negate every conceivable basis that might support the [action]." *Columbia Gas Transm.* at ¶ 20.

{¶ 17} The present appeal arises from an order granting a motion to dismiss for failure to state a claim under Civ.R. 12(B)(6). In reviewing whether Sherman has stated a claim under Ohio's Equal Protection Clause, we must accept as true all factual allegations in the complaint. *Ohio Bur. of Workers' Comp. v. McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, ¶ 12. "[T]hose allegations and any reasonable inferences drawn from them must be construed in the nonmoving party's favor." *Id*. To grant the motion, "it must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to the relief sought." *Id.*

{¶ 18} When an equal-protection claim analyzed under the rational-basis test is reviewed on a motion to dismiss for failure to state a claim, it is important to remember that the motion-to-dismiss standard "is procedural, and simply allows the plaintiff to progress beyond the pleadings and obtain discovery, while the rational basis standard is the substantive burden that the plaintiff will ultimately have to meet to prevail on an equal protection claim." *Wroblewski v. Washburn*,

965 F.2d 452, 459-460 (7th Cir.1992).[2]  We agree with the *Wroblewski* court that "[w]hile we * * * must take as true all of the complaint's allegations and reasonable inferences that follow, we apply the resulting 'facts' in light of the deferential rational basis standard."  *Id.* at 460; *see also Giarratano v. Johnson*, 521 F.3d 298, 303-304 (4th Cir.2008) (applying *Wroblewski*).

### B.  Whether Sherman Stated a Claim

{¶ 19} As noted above, the appellate court held that Sherman stated a claim under Ohio's Equal Protection Clause.  Our review is therefore focused on the same question: did Sherman allege facts that, if accepted as true, would entitle him to relief?

### 1.  OPERS's Arguments

{¶ 20} OPERS argues that the state has a valid interest in responsibly managing OPERS funds and it rationally furthers that interest by reducing the subsidy it provides to retirees reemployed in OPERS-covered positions.  It first asserts that the state may lawfully distinguish retirees who are reemployed from those who are not, reducing the subsidy only for the former, because it can rationally assume that reemployed retirees do not need the subsidy as much as those who are not reemployed.  It then argues that distinguishing retirees reemployed in an OPERS-covered position from those reemployed elsewhere is rational for two reasons.

{¶ 21} First, OPERS asserts that if the subsidies of *all* reemployed retirees, rather than those for retirees reemployed in OPERS-covered positions, are reduced, OPERS would incur additional costs and administrative burdens in identifying the retirees reemployed in non-OPERS-covered positions.  Specifically, OPERS claims

---

2. Although *Wroblewski* refers to the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the parties take the position that the federal Equal Protection Clause is the functional equivalent of the Equal Protection Clause in the Ohio Constitution in the context of this case.

that it has two ways of easily finding out when a retiree is reemployed in an OPERS-covered position: an employer participating in OPERS must inform OPERS when it employs a retiree receiving an OPERS pension or OPERS will find out that a retiree is reemployed in an OPERS-covered position in managing the retiree's contributions under R.C. 145.38(B)(1) and 145.384. But OPERS claims it does not have an easy way to identify retirees reemployed in other positions. Neither private employers nor public employers in other pension funds are required to notify OPERS when reemploying a retiree, and OPERS will not find out that the retiree is reemployed in the ordinary course of business, because it will not manage any contributions from those retirees. As a result, OPERS argues, identifying retirees reemployed in non-OPERS-covered positions "would require developing an entirely new system, if it could be done at all." Furthermore, undertaking such efforts would impose additional costs on OPERS that "might easily outrun whatever money the system would save."[3]

{¶ 22} Second, OPERS contends that retirees reemployed in OPERS-covered positions impose additional costs and burdens on OPERS that other reemployed retirees do not. OPERS incurs costs associated with providing pensions. But retirees who are reemployed in an OPERS-covered position earn an additional benefit from OPERS funded by new contributions by the retiree and the retiree's new employer. According to OPERS, it must "separately track and account for reemployed retirees" and "[d]oing so necessarily imposes additional administrative burdens and generates additional costs for OPERS." Because of these costs and burdens, OPERS concludes, withholding part of these retirees'

---

3. With respect to public employers that are not in the OPERS network, OPERS acknowledges that their retirement systems *are* required to notify OPERS when those employers employ an OPERS retiree. But it claims that this requirement matters little because no penalty is imposed on those retirement systems if they fail to comply, even though employers in the OPERS network are penalized if they fail to report to OPERS that they have employed an OPERS retiree.

health-insurance subsidies is a rational way for OPERS to preserve the long-term health of its funds.

### 2. *Sherman's Arguments*

{¶ 23} Sherman responds by arguing that OPERS arbitrarily assumes that reemployed retirees have less of a need for the subsidy without taking into account the retiree's actual income. Sherman also argues that OPERS could easily identify retirees who become reemployed either in the private sector or with a public employer that is not in the OPERS network. The public-employee pension plans other than OPERS are already required to notify OPERS when they employ an OPERS retiree. OPERS also already requests other information from its retirees and could easily ask its retirees whether they are reemployed.

{¶ 24} Sherman reiterates the Tenth District's holding that retirees reemployed in OPERS-covered positions do not cause OPERS to incur more costs than it would otherwise. An employer would still need to fill an open position. And OPERS would incur costs associated with tracking and providing that employee's pension benefits. Sherman argues that OPERS has not provided a rational basis for assuming that the administrative cost of overseeing a reemployed retiree's contribution is greater than the cost of overseeing the pension benefits of a nonretired employee who fills the same position.

### 3. *Sherman Has Stated a Claim for Relief*

{¶ 25} The dispute before us is whether Sherman's allegations are sufficient to state a claim in light of the justifications provided by OPERS for its reduction of Sherman's subsidy. In our view, they are. We therefore agree with Sherman that his complaint states a claim under the Equal Protection Clause of the Ohio Constitution.

{¶ 26} First, we hold that Sherman has alleged sufficient facts to negate OPERS's argument that its subsidy reductions for all OPERS-covered reemployed retirees are rational because OPERS would incur additional costs if it had to identify

all reemployed retirees. Sherman alleged that "OPERS requires OPERS retirees who are reemployed in an OPERS-covered position to complete and return" a form providing OPERS with notice of the retiree's reemployment. He then alleges that "[i]t is administratively feasible for OPERS to require individuals re-employed in a non OPERS-covered position to complete a similar form." In particular, Sherman points out that "OPERS * * * regularly corresponds with and requests information from OPERS retirees. These communications from OPERS include everything from asking retirees to select insurance coverage to asking them for their Medicare ID number. OPERS could also ask retirees if they are re-employed in a non OPERS-covered position." Consequently, "OPERS'[s] failure to request current employment information from *all* OPERS retirees is not a rational basis for its disparate treatment of re-employed OPERS retirees." (Emphasis sic.) Assuming that these allegations are true, they are sufficient to negate OPERS's proffered justification that if it was even possible to identify retirees reemployed in non-OPERS-covered positions, an entirely new system would need to be developed.

{¶ 27} Furthermore, although OPERS argues that identifying retirees reemployed in non-OPERS-covered positions would impose additional costs on it, it does not claim that those costs would exceed the savings OPERS realizes by reducing the subsidies of those retirees. It argues only that those costs "might" exceed the savings. Accepting Sherman's allegations as true, we conclude they are sufficient to survive a motion to dismiss for failure to state a claim based on this argument by OPERS.

{¶ 28} Second, we reject OPERS's argument that Sherman's complaint should be dismissed because OPERS incurs costs when its retirees are reemployed in OPERS-covered positions that it does not incur when its retirees are reemployed in non-OPERS-covered positions. On this point, it must be remembered that the key question at this stage is whether, in light of the justification offered by OPERS, it "appear[s] beyond doubt that [Sherman] can prove no set of facts in support of

the claim that would entitle [him] to the relief sought," *McKinley*, 130 Ohio St.3d 156, 2011-Ohio-4432, 956 N.E.2d 814, at ¶ 12. OPERS's "additional costs" justification fails to require dismissal of Sherman's complaint because, even if true, it does not necessarily follow that Sherman can prove no set of facts that would entitle him to relief.

{¶ 29} As the Tenth District pointed out, if an employer in the OPERS network does not hire an OPERS retiree, the position will still need to be filled, and OPERS will incur costs associated with administering that employee's pension. We do not know whether the costs OPERS incurs administering an employee's pension equals or exceeds the costs OPERS incurs administering a retiree's contributions. No evidence on this matter is before us at this stage of the litigation.

{¶ 30} Notably, OPERS does not compare the costs associated with administering a retiree's contributions and the costs associated with administering an employee's pension. Nor does it assert that such a comparison is irrelevant. And given that the information needed to calculate those costs and assess their relevance is entirely within OPERS's possession, we decline to make any assumptions on the matter ourselves.[4] As a result, we cannot say that it appears beyond doubt that Sherman can prove no set of facts to support his claim. *McKinley* at ¶ 12. Instead, accepting Sherman's allegations as true and construing all reasonable inferences in his favor, *id.*, his complaint is sufficient to state a claim upon which relief can be granted. We therefore decline to hold that OPERS's claim of additional costs is a sufficient rational basis requiring dismissal of Sherman's complaint.

{¶ 31} As a result, we reject OPERS's argument that Sherman has failed to state a claim under the Equal Protection Clause of the Ohio Constitution.

---

4. We express no opinion on what discovery will show in this matter, nor do we suggest that any particular conclusion relating to the merits will be required based on the results of discovery. We leave it to the trial court to address these matters in the first instance.

### III. Conclusion

{¶ 32} For these reasons, we affirm the judgment of the Tenth District Court of Appeals.

Judgment affirmed.

FRENCH, DONNELLY, and STEWART, JJ., concur.

FISCHER, J., concurs in judgment only, with an opinion.

DEWINE, J., dissents, with an opinion joined by KENNEDY, J.

_____

**FISCHER, J., concurring in judgment only.**

{¶ 33} While I agree with the conclusion reached by the majority, I respectfully concur in judgment only, because I cannot unreservedly approve of the application of the federal rational-basis analysis to an equal-protection claim made under the Ohio Constitution, Article I, Section 2.

{¶ 34} I agree with the portion of the dissenting opinion noting that the language of the equal-protection provision of the Ohio Constitution differs significantly from the language of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and that it may be appropriate in a future case for this court to reconsider its precedent treating the two provisions as functional equivalents. I wholeheartedly agree that when we are presented with a case questioning this interpretation of the Ohio equal-protection provision, and that question is fully briefed by the adverse parties, this court should revisit that precedent.

{¶ 35} The Ohio Equal Protection Clause provides, "All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same * * *." Article I, Section 2, Ohio Constitution.

{¶ 36} The federal Equal Protection Clause, by way of contrast, provides that "[n]o State shall * * * deny to any person within its jurisdiction the equal

14

protection of the laws." Fourteenth Amendment to the U.S. Constitution, Section 1.

{¶ 37} I have recently set forth my position regarding the need to reexamine the Ohio equal-protection provision. *See Stolz v. J & B Steel Erectors, Inc.*, 155 Ohio St.3d 567, 2018-Ohio-5088, 122 N.E.3d 1228, ¶ 28-44 (Fischer, J., concurring). This case—in which the parties focus on the Ohio equal-protection provision, yet ask this court to apply an analysis based on only its federal counterpart—emphasizes the points I raised in *Stolz*. Among those points is my concern that we avoid any upward delegation of our authority and duty to interpret the Ohio Constitution, placing us in a position in which we might blindly accept any further developments in federal law. *Id.* at ¶ 42 (Fischer, J., concurring).

{¶ 38} Given my continuing concern that we avoid any pitfalls that may arise from perhaps erroneously treating the two provisions as functionally equivalent, I respectfully concur in judgment only.

_____

**DEWINE, J., dissenting.**

{¶ 39} The Ohio Public Employee Pension System ("OPERS") provides a subsidy to retirees to help pay for their health insurance. But it reduces the amount of the subsidy for employees who "double dip"—that is, workers who are rehired in the OPERS system after retirement, thus drawing both a state salary and a state pension. No doubt, many people would find the policy eminently reasonable. Yet the majority concludes that the plaintiff's challenge to the practice states a claim for a violation of the Ohio Constitution. I disagree.

### Both Parties Ask Us to Apply Rational-Basis Review

{¶ 40} Jeffrey Sherman's lawsuit alleges that OPERS's policy violates the Equal Protection and Benefit Clause of the Ohio Constitution, Article I, Section 2. The language of this provision differs in significant respects from the language of the Equal Protection Clause of the Fourteenth Amendment to the United States

Constitution, and the two clauses have unique histories.[5]  *See generally Stolz v. J & B Steel Erectors, Inc.*, 155 Ohio St.3d 567, 2018-Ohio-5088, 122 N.E.3d 1228, ¶ 28-44 (Fischer, J., concurring).  Nonetheless, in line with our precedent, both parties would have us apply the rational-basis standard developed by federal courts for federal constitutional claims in this case.  The majority, too, presumes that rational-basis review applies.  Because the parties have not advanced any arguments for a different standard of review, and the majority premises its holding on rational-basis review, I will analyze this case under that standard.

### Judicial Review of Government Benefit-Allocation Decisions

{¶ 41} Both the federal and state equal-protection provisions have long been understood as primarily protecting against government classifications that target individuals based on suspect characteristics or the exercise of fundamental rights.  *Valvoline Instant Oil Change, Inc. v. Tracy*, 78 Ohio St.3d 53, 55, 676 N.E.2d 114 (1997).  Thus, under our modern jurisprudence, classifications in those categories will be closely examined by the judiciary.  *Id.*

---

5. Enacted as part of the 1851 Constitution, the Ohio provision provides:

> All political power is inherent in the people.  Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the General Assembly.

Despite the different language and history of the federal guarantee, since 1895, this court has recognized that this provision provides an individual right to equal protection under the law.  *See State ex rel. Schwartz v. Ferris*, 53 Ohio St. 314, 336-337, 41 N.E. 579 (1895).  And for decades, this court has treated the two provisions as functional equivalents.  *See, e.g.*, *Kinney v. Kaiser Aluminum & Chem. Corp.*, 41 Ohio St.2d 120, 123, 322 N.E.2d 880 (1975), citing *Porter v. Oberlin*, 1 Ohio St.2d 143, 205 N.E.2d 363 (1965); *Beatty v. Akron City Hosp.*, 67 Ohio St.2d 483, 491, 424 N.E.2d 586 (1981); *Am. Assn. of Univ. Professors, Cent. State Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 60, 717 N.E.2d 286 (1999).  At some point in the future, it may be appropriate for this court to consider revisiting its precedent and decoupling our interpretation of the Ohio provision from the United States Supreme Court's interpretation of the federal guarantee.  But without adversarial briefing on the topic, this case makes for a poor vehicle in which to take up the issue.

{¶ 42} In contrast, "judicial restraint" is the modus operandi when it comes to classifications stemming from social and economic regulations. *Fed. Communications Comm. v. Beach Communications, Inc.*, 508 U.S. 307, 313, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993). The government has "wide latitude" in enacting such laws, *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), and a "strong presumption of validity" attaches to laws in this area, *Beach Communications* at 314. A court will uphold a classification if there is " 'any reasonably conceivable state of facts that could provide a rational basis for the classification.' " *Am. Assn. of Univ. Professors, Cent. State. Univ. Chapter v. Cent. State Univ.*, 87 Ohio St.3d 55, 58, 717 N.E.2d 286 (1999), quoting *Beach Communications* at 313. Only when a classification is found to be wholly arbitrary will it violate rational-basis review. *Pickaway Cty. Skilled Gaming, L.L.C. v. Cordray*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, ¶ 41, citing *New Orleans v. Dukes*, 427 U.S. 297, 304, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976). The guiding principle is that "even improvident decisions will eventually be rectified by the democratic process." *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).

{¶ 43} The limitations on judicial review "have added force" when it comes to classifications that draw lines with regard to who receives government benefits. *Beach Communications* at 315. The process of defining who will receive a government benefit " 'inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line.' " *Id.*, quoting *Mathews v. Diaz*, 426 U.S. 67, 83-84, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976).

{¶ 44} Thus, when the government allocates benefits, there will almost always be a strong argument that some group of individuals got too little and another got too much. *See Beach Communications* at 315-316. Citizens of some states benefit from far higher federal-government spending per capita than others.

The Council of State Governments, *Federal Spending in the States* (May 2017), http://knowledgecenter.csg.org/kc/system/files/2017_CFFR_Report_3.pdf (accessed Sept. 17, 2020) [https://perma.cc/KDU8-ZQRK]. Farmers who plant corn receive higher subsidies than those who grow wheat. Environmental Working Group, Farm Subsidy Database (2018), https://farm.ewg.org/region.php?fips=00000&progcode=total&yr=2018 (accessed Sept. 20, 2020) [https://perma.cc/2S7K-FMCL]. Homeowners are subsidized more than renters. *See generally* Schwartz, *Housing Policy in the United States* (2d Ed.2010). The same goes for tax policy. Like your cup of coffee with sugar (and no milk)?—you are subject to the Ohio sales tax. *See* Ohio Department of Taxation, ST 2004-01–Food Definition (Revised May 2015), https://tax.ohio.gov/static/sales_and_use/information_releases/st200401.pdf, 3-4 (accessed Sept. 17, 2020) [https://perma.cc/79NW-MZ38]. But order it black—pay no tax. *Id.*

{¶ 45} Just because someone can make a compelling case that a particular government policy can lead to outcomes that seem unfair doesn't mean that there is an equal-protection problem. When allocating limited resources, the government has to draw the line somewhere. As long as the classifications are not invidious or wholly arbitrary, courts will not "second-guess" the government's policy decisions when it comes to allocating public funds among potential recipients. *Dandridge v. Williams*, 397 U.S. 471, 487, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, 880 N.E.2d 420, ¶ 71.

{¶ 46} The United States Supreme Court has elaborated on this point:

[C]ourts are compelled under rational-basis review to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it " 'is not made with mathematical nicety or because in practice it results in some inequality.' " *Dandridge v.*

18

> *Williams*, supra, at 485, quoting *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 78, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911). "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. Chicago*, 228 U.S. 61, 69-70, 33 S.Ct. 441, 443, 57 L.Ed. 730 (1913).

*Heller v. Doe*, 509 U.S. 312, 321, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). We have adopted the *Heller* court's standard. *See Am. Assn. of Univ. Professors*, 87 Ohio St.3d at 58, 717 N.E.2d 286, citing *Heller*; *McCrone v. Bank One Corp.*, 107 Ohio St.3d 272, 2005-Ohio-6505, 839 N.E.2d 1, ¶ 32, citing *Metropolis Theater*.

{¶ 47} Thus, to uphold a classification under rational-basis review, all that is needed is a rationale that seems plausible. *Beach Communications*, 508 U.S. at 313-314, 113 S.Ct. 2096, 124 L.Ed.2d 211, citing *Fritz*, 449 U.S. at 179, 101 S.Ct 453, 66 L.Ed.2d 368; *State v. Batista*, 151 Ohio St.3d 584, 2017-Ohio-8304, 91 N.E.3d 724, ¶ 26. The government doesn't even need to place any evidence in the record establishing the rationale for the classification. *Heller* at 319; *Pickaway Cty. Skilled Gaming*, 127 Ohio St.3d 104, 2010-Ohio-4908, 936 N.E.2d 944, at ¶ 20. And the lawmakers who made the classification don't have to " 'actually articulate at any time the purpose or rationale supporting its classification.' " *Heller* at 320, quoting *Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992).

{¶ 48} *Heller*'s standard of presumed rationality applies in the context of a motion to dismiss for failure to state a claim. *In re Detroit*, 841 F.3d 684, 701 (6th Cir.2016); *see also Gregory v. Ashcroft*, 501 U.S. 452, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (applying rational-basis review at the pleading stage); *State v. Williams*, 88 Ohio St.3d 513, 728 N.E.2d 342 (2000) (same). A court accepts as true a plaintiff's factual allegations, but the court must "apply the resulting 'facts' in light of the deferential rational basis standard." *Wroblewski v. Washburn*, 965 F.2d 452,

460 (7th Cir.1992); *see also Giarratano v. Johnson*, 521 F.3d 298, 303-304 (4th Cir.2008); *In re Detroit* at 701-702. Thus, in order "[t]o survive a motion to dismiss* * *, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Id.*; *see also Giarratano* at 304; *In re Detroit* at 701-702. What this means is that a plaintiff cannot simply point to a government policy that seems irrational; rather, the complaint must contain "facts rebutting the likely non-discriminatory reasons" for a particular policy. *In re Detroit* at 702.

{¶ 49} Here, the state has set forth an obvious rationale for the reduction of the subsidy for employees who double dip: to conserve OPERS resources. And one might conceive of other plausible reasons. As it suggested in the trial court, the government might simply want to discourage retired employees from double dipping. After all, it is a practice that rankles many citizens. Toledo Blade, *No more double-dipping* (Dec. 22, 2018), https://www.toledoblade.com/ opinion/editorials/2018/12/22/no-more-double-dipping/stories/ (accessed Sept. 20, 2020) [https://perma.cc/8N4L-MERT]. The court of appeals rejected this rationale on the basis that double dipping is not illegal, but there need not be a law establishing a state policy for a purported rationale to satisfy rational-basis review. *See Fritz* at 179. Nevertheless, because the state advanced the money-saving rationale in its brief and the majority finds that rationale unsatisfactory, I will focus on that.

{¶ 50} Sherman doesn't deny that OPERS has a legitimate government interest in preserving its funds. But he complains that OPERS has drawn a line in the wrong place. In his view, it is impermissibly discriminatory to allow some retired employees who go back to work to receive the full subsidy but not others.

{¶ 51} To succeed on his claim, Sherman must allege facts showing that there is no "reasonably conceivable state of facts," *Am. Assn. of Univ. Professors*, 87 Ohio St.3d at 58, 717 N.E.2d 286, that could provide a rational basis to justify

the distinction that OPERS has made. *See, e.g., Giarratano*, 521 F.3d at 303-304. But nothing in Sherman's complaint supports the assertion that there is no meaningful difference between retirees who are reemployed in OPERS-covered positions and those who are not. And from OPERS's perspective, there is a critical difference: one group continues to accrue benefits through OPERS, while the other does not.

{¶ 52} By statute, a public-sector retiree may be reemployed in the OPERS system. R.C. 145.38(B)(1). When that happens, the retiree must make contributions to OPERS, but he is not considered a member of OPERS and does not accrue additional pension benefits. *See id.*; R.C. 145.38(D)(1). Rather, the retiree either accrues a different type of benefit—an annuity—and his contributions fund the annuity, R.C. 145.384(B)(2), or the retiree may elect to receive a lump-sum payment in the amount of his contributions plus interest, R.C. 145.384(H).

{¶ 53} Thus, while OPERS is required by statute to track and maintain the contributions of a retiree who is reemployed within the OPERS system, the same is not true with respect to retirees who get new jobs that are not covered by OPERS. Sherman's complaint contains no allegations that this difference, which is readily apparent from the applicable statutory provisions, does not provide a rational basis for the classification.

{¶ 54} Rather, Sherman's complaint addresses only one possible justification for the classification: the administrative difficulty associated with figuring out when retirees become reemployed in positions outside of the OPERS system. This, Sherman contends, was OPERS's initial explanation for the different treatment. In response to that explanation, Sherman sets forth various methods through which OPERS could, in his view, collect reemployment information from retirees who have not reentered the OPERS system.

{¶ 55} But under rational-basis review, the question is not whether an alternative method is feasible—it's whether the existing classification is rational.

*See Armour v. Indianapolis*, 566 U.S. 673, 685, 132 S.Ct. 2073, 182 L.Ed.2d 998 (2012). It may well be true that OPERS could find a way to track the employment status of retirees who have not been rehired in the OPERS system, but it does not follow that OPERS's decision to differentiate retirees that have reentered the OPERS system from those who have not is wholly arbitrary. Remember, under rational-basis review, the state can permissibly draw lines that distinguish between people "who have an almost equally strong claim to favored treatment." *Beach Communications*, 508 U.S. at 315, 113 S.Ct. 2096, 124 L.Ed.2d 211, quoting *Diaz,* 426 U.S. at 83, 96 S.Ct. 1883, 48 L.Ed.2d 478. The Constitution does not require the government "to draw the perfect line nor even to draw a line superior to some other line it might have drawn." *Armour* at 685. It merely requires a rational line. *Id*.

### The Majority's Flawed Application of Rational-Basis Review

{¶ 56} The majority purports to apply rational-basis review, but in reality, it goes far beyond the limits of such review. It concludes that Sherman has stated a claim because he might be able to develop evidence showing that OPERS could save even more money by reducing the subsidy for all employees who go back to work, not just those who go back to work for an OPERS employer. In essence, the majority says that dismissal is improper because more fact-finding is needed.

{¶ 57} The majority identifies two areas in which it believes discovery and judicial fact-finding might help Sherman demonstrate the irrationality of the classification. First, it suggests that additional fact-finding might show that it would be administratively feasible for OPERS to identify retirees who take jobs outside of the OPERS system and it may prove to be the case that OPERS would save enough by reducing the subsidy to these employees to offset the costs of identifying and tracking such employees. Second, it says:

> [I]f an employer in the OPERS network does not hire an OPERS retiree, the position will still need to be filled, and OPERS will incur costs associated with administering that employee's pension. We do not know whether the costs OPERS incurs administering an employee's pension equals or exceeds the costs OPERS incurs administering a retiree's contributions. *No evidence on this matter is before us at this stage of the litigation.*

(Emphasis added.) Majority opinion at ¶ 29.

{¶ 58} This goes well beyond the contours of rational-basis review. Under rational-basis review, a policy "choice is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Beach Communications*, 508 U.S. at 315, 113 S.Ct. 2096, 124 L.Ed.2d 211. Yet the majority demands both empirical data and courtroom fact-finding. It ignores the plausible explanation set forth by OPERS and instead insists that OPERS prove that its classification is not just reasonable but is the most economically efficient choice.

{¶ 59} Rational-basis review is supposed to mean that the judiciary will not " 'sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines.' " *Heller*, 509 U.S. at 319, 113 S.Ct. 2637, 125 L.Ed.2d 257, quoting *Dukes*, 427 U.S. at 303, 96 S.Ct. 2513, 49 L.Ed.2d 511. But that is precisely the role the majority appropriates for itself today.

{¶ 60} Whatever the majority chooses to call what it is doing—it is not rational-basis review. Or at least it is not rational-basis review as that term has been used in our jurisprudence or in the jurisprudence of the United States Supreme Court.

**{¶ 61}** One wonders where we go from here. If the court continues in this vein, what other classifications might violate the Ohio Constitution? Presumably, almost any government act that draws a line or divvies up a benefit will be fair game for a lawsuit. Under the majority's logic, as long as someone—with the benefit of hindsight—can convince a judge that there might have been a better place to draw the line, there has been an equal-protection violation. Principles of "judicial restraint"—once thought to be the hallmark of rational-basis review—are out the door. *See Beach Communications* at 314.

### Conclusion

**{¶ 62}** I don't believe that Article I, Section 2 of the Ohio Constitution was intended as a license for judicial nitpicking and Monday-morning quarterbacking of decisions by policymakers allocating government benefits, at least when those decisions do not involve fundamental rights or suspect classifications. Nor do I believe that what the majority applies in this case is anything close to rational-basis review as that term has been understood in our jurisprudence. So I dissent.

KENNEDY, J., concurs in the foregoing opinion.

_____

Dworken & Bernstein Co., L.P.A., Nicole T. Fiorelli, Patrick J. Perotti, and Frank A. Bartela, for appellee.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, Michael J. Hendershot, Chief Deputy Solicitor General, and Samuel C. Peterson, Deputy Solicitor General, for appellant.

_____