[Cite as *State ex rel. Worthington v. Ohio Pub. Emps. Ret. Sys.*, 2022-Ohio-535.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Therese Worthington, | : | |
| Relator, | : | |
| v. | : | No. 20AP-425 |
| The Ohio Public Employees Retirement System et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on February 24, 2022

**On brief:** *Hurm Law Firm, LLC,* and *Matthew T. Hurm,* for relator.

**On brief:** *Dave Yost,* Attorney General, *Samuel A. Peppers, III,* and *Lisa A. Reid,* for respondent Ohio Public Employees Retirement System.

**On brief:** *Dave Yost,* Attorney General, *Holly E. LeClair Welch,* for respondent Ohio State University.

IN MANDAMUS

LUPER SCHUSTER, P.J.

{¶ 1} Relator, Therese Worthington, initiated this original action seeking a writ of mandamus ordering respondent, The Ohio Public Employees Retirement System ("OPERS"), to rescind a retroactive revocation of her health insurance coverage from March 2018 through June 2018 and to reinstate her health insurance for that same period. The requested writ of mandamus related to Worthington's re-employment as an independent contractor after retirement with respondent, The Ohio State University ("OSU").

{¶ 2}   Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate of this court.  The magistrate issued the appended decision, including findings of fact and conclusions of law.  The magistrate determined Worthington did not show a clear legal right to health insurance coverage during her work as an independent contractor and did not show OPERS has a clear legal duty to provide such benefits.  The magistrate additionally determined Worthington did not show that OSU has a clear legal duty to remedy the gap in healthcare coverage for her.  Thus, the magistrate recommends this court deny Worthington's petition for a writ of mandamus.

{¶ 3}   No party has filed objections to the magistrate's decision.  The case is now before this court for review.

{¶ 4}   Finding no error of law or other defect on the face of the magistrate's decision, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  In accordance with the magistrate's decision, we deny Worthington's request for a writ of mandamus.

*Writ of mandamus denied.*

SADLER and DORRIAN, JJ., concur.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Therese Worthington, | : | |
| Relator, | : | |
| v. | : | No. 20AP-425 |
| The Ohio Public Employees Retirement System et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 30, 2021

*Hurm Law Firm, LLC,* and *Matthew T. Hurm,* for relator.

*Dave Yost,* Attorney General, *Samuel A. Peppers, III,* and *Lisa A. Reid,* for respondent Ohio Public Employees Retirement System.

*Dave Yost,* Attorney General, *Holly E. LeClair Welch,* for respondent Ohio State University.

IN MANDAMUS

{¶ 5} Relator, Therese Worthington, seeks a writ of mandamus ordering respondent, The Ohio Public Employees Retirement System ("OPERS"), to rescind a retroactive revocation of relator's health insurance coverage from March 2018 through June 2018, and reinstate relator's health insurance for that period.

{¶ 6} The dispute arose when relator retired from employment with respondent Ohio State University ("OSU") and began receiving retirement benefits from OPERS, then

returned to work for OSU as an independent contractor. OPERS determined that relator was not entitled to health insurance benefits during her period of re-employment with OSU, and retroactively rescinded relator's healthcare coverage.

Findings of Fact:

{¶ 7}   1. Relator became an OPERS member through employment beginning in approximately 1978 and eventually was an OPERS member through her employment with OSU from February 2005 to November 30, 2017.  (Compl. at 3.)

{¶ 8}   2. Relator applied for retirement with OPERS with her final date of employment being November 30, 2017 and commencement of retirement benefits on December 1, 2017.  (Stip. at 5, 38-39.)

{¶ 9}   3. After taking a lump sum payout, relator received a gross monthly retirement benefit of $3,725, and from this paid a healthcare premium deduction of $96.13.  (Stip. at 38.)

{¶ 10} 4. After exploring the impact of re-employment upon her retirement benefits from OPERS, relator accepted an offer from OSU to provide teaching services as an independent contractor, with services commencing on February 6, 2018.  (Stip. at 2.)

{¶ 11} 5. Relator terminated her contract employment with OSU effective June 29, 2018.  (Stip. at 13.)

{¶ 12} 6. OSU submitted to OPERS a notice of re-employment of OPERS benefit recipient on July 30, 2018, notifying OPERS that relator had returned to service with her former employer, OSU, under an independent contractor agreement.  (Stip. at 2.)

{¶ 13} 7. After receiving notice of relator's return to service with OSU, OPERS concluded that relator was ineligible for retirement benefits and healthcare coverage pursuant to R.C. 145.38 and Ohio Adm.Code 145-4-30(I) for the period of her contract employment.  OPERS notified relator that it had issued a refund of relator's healthcare premiums withheld from her retirement benefit during the period, minus the cost of certain prescription drug claims paid.  (Stip. at 36.)

{¶ 14} 8. Because OSU had not timely advised OPERS of relator's re-employment as an independent contractor, OPERS billed OSU under R.C. 145.38(B)(2) and 145.51 for

the amount of overpayment of retirement benefits to relator that she should not have received during the contract of employment.  The amount billed was $14,238.28.  (Stip. at 4.)

{¶ 15} 9.  OPERS has not attempted to recoup from relator the monthly retirement benefits paid to her during the contract employment period.

{¶ 16} 10.  Upon learning that she would lose her retirement benefits and OPERS healthcare coverage during the period of contract employment, relator contacted OSU to inquire if her services through that period could be deemed as volunteer service hours if she returned for contract payments.  OSU notified her that this was not possible via letter sent from Sean Driscoll, benefits administration manager with OSU, dated October 22, 2018.  (Stip. at 14.)

{¶ 17} 11.  During the period in which relator was exploring contract re-employment with OSU, she inquired of OSU regarding the impact of this on her retirement benefits.  OSU declined to opine on this and suggested relator contact OPERS. (Stip. at 29.)

{¶ 18} 12.  A series of phone calls ensued in which, relator asserts, OPERS staff verbally assured her that her retirement benefits would not be affected if she resumed employment with OSU as an independent contractor more than 60 days after her retirement date.  (Stip. at 34.)

{¶ 19} 13.  Respondent OSU has submitted certified evidence containing e-mail communications between relator and OSU as she considered the possibility of contract re-employment.  The documents submitted include an early draft of a contract proposal between relator and OSU and Geauga County, an interested party in relator's teaching position.  (Stip. at 9.)

{¶ 20} 14.  In an exchange of e-mails between OSU employee Erik Draper and relator dated January 23, 2018, Draper suggests to relator that relator "[l]ook closely at the statement because it states 'will forfeit pension benefits and access to health care through OPERS for the **entire period of service as an independent contractor**.' " (Emphasis sic.)  (OSU Certified Evid. at 10.)  Draper and relator discussed the impact of OPERS statutes and regulations, and relator emphasized that she was aware of the possibility of forfeiture but did not think that it would apply to her because of the two-

month interval between retirement and resumption of contract employment. (OSU Certified Evid. at 11.)

{¶ 21} 15. In a January 25, 2018 e-mail between Draper and relator, Draper quoted relator as confident that, after conversations with an OPERS representative named Anita, she was confident that she would not lose benefit as long as she did not return to a public sector job before February 2, 2018. (OSU Certified Evid. at 16.)

{¶ 22} 16. Relator filed her complaint in mandamus on September 14, 2020. The complaint prays for a writ that "requires Respondents to comply with the laws of the State of Ohio and to order Respondents to find Relator is eligible for health insurance benefits from March 2018 through June 2018." (Compl. at 10.)

{¶ 23} 17. OPERS has submitted a certified record of proceedings in OPERS' administrative determination in the matter, and OSU has submitted certified evidence consisting primarily of e-mail communications authenticated by affidavit. The magistrate denied relator's request to submit a letter from an OSU employee as additional evidence because it was not presented in affidavit form. Relator also sought to introduce audio recordings of her conversations with OPERS' staff. The magistrate denied leave because this evidence was offered outside the evidentiary cutoff for the case and in any event was never received by the clerk.

Discussion and Conclusions of Law:

{¶ 24} To obtain a writ of mandamus, a relator must show a clear legal right to the relief sought and a clear legal duty on the part of the respondent to provide that relief, in conjunction with the absence of a plain and adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967); *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983). Jurisdiction and venue for an original action in mandamus lie with this court pursuant to the Ohio Constitution, Article IV, Section 3(B)(1)(b), R.C. 2731.02, and R.C. 149.43(C)(1)(b).

{¶ 25} Relator seeks a writ of mandamus ordering OPERS to reinstate her healthcare coverage from March 1, 2018 to July 1, 2018. In the alternative, relator argues, although the complaint does not present a specific request for a writ to this effect, that

OSU is liable to OPERS for any healthcare claims that were initially paid by OPERS' insurance, and then rescinded.

{¶ 26} Ohio law expressly permits OPERS retirees to resume employment with a public employer. R.C. 145.38(B)(1); *Sherman v. Ohio Pub. Emps. Retirement Sys.,* 163 Ohio St.3d 258, 2020-Ohio-4960, ¶ 10. Such re-employment, however, is subject to numerous timing and notification requirements. R.C. 145.38(B)(1) through (7). To avoid the possibility of circumventing these restrictions and notice requirements, R.C. 145.38(B)(6) expressly addresses a resumption of work for a former public employer as an independent contractor:

> A PERS retirant who enters into a contract to provide services as an independent contractor to the employer by which the retirant was employed at the time of retirement or, less than two months after the retirement allowance commences, begins providing services as an independent contractor pursuant to a contract with another public employer, shall forfeit the pension portion of the retirement benefit for the period beginning the first day of the month following the month in which the services begin and ending on the first day of the month following the month in which the services end.

{¶ 27} Relator, in resuming work for OSU, relied on the lapse of a two-month interval between her retirement and her resumption of work as an independent contractor as shielding her from forfeiture. OPERS, to the contrary, interprets this statute's initial sentence in two parts: first, a forfeiture applicable to any OPERS retiree who provides services as an independent contractor to the *public employer from which the employee retired, regardless of when such contract for services takes place*; and second, a required 60-day interval for resumption of work as an independent contractor with all other public employers.

{¶ 28} Because the state retirement systems, including OPERS, are creatures of statute, they may only act in strict compliance with their enabling statutory schemes. *Cosby v. Cosby,* 96 Ohio St.3d 228, 2002-Ohio-4170, ¶ 19; *Dreger v. Pub. Emps. Retirement Sys.,* 34 Ohio St.3d 17, 20-21 (1987). As a result, "[a]s a retirement system created by statute, PERS can only pay benefits as specifically provided by statute." *Ohio*

*Pub. Emps. Retirement Sys. v. Coursen,* 156 Ohio App.3d 403, 2004-Ohio-1229, ¶ 7 (9th Dist.).

{¶ 29}  The only evidence potentially in dispute in this case is what relator was told by OPERS staff in verbal conversations as relator prepared to resume work for OSU as an independent contractor.  The conditions of relator's retirement and subsequent resumption of work as an independent contractor are not in dispute.  As a result, two legal questions present themselves:  (1) Did OPERS correctly interpret its statute as mandating a forfeiture of retirement benefits, including healthcare coverage, and (2) is OPERS bound by the verbal representations of its staff in telephone conversations with relator.

{¶ 30}  Answering the second question first, Ohio law could not be clearer that state agencies are bound to act by law, and estoppel cannot apply to require an agency to comply with representations tendered by its staff that are contrary to the governing law:

> This conclusion is supported by a number of decisions from this court in which we refused to apply promissory estoppel to the retirement systems as a matter of law. See *Sandhu v. Public Emp. Retirement Sys.* (Oct. 9, 1980), Franklin App. No. 80AP-333, 1980 Ohio App. LEXIS 13384 ("Estoppel could not be applied against the defendant in this case, as the defendant only performed its duties as defined by statute.") *McAuliffe v. Bd. of Pub. Emp. Retirement Sys.* (1994), 93 Ohio App. 3d 353, 361-363, 638 N.E.2d 617 (PERS could not be estopped from following the relevant statutory provisions despite representations of staff); *State ex rel. Shumway v. Ohio State Teachers Retirement Bd.* (1996), 114 Ohio App. 3d 280, 289, 683 N.E.2d 70 (court refused to apply estoppel to STRS, concluding that "estoppel is not applied against the state or its agencies in the exercise of a governmental function"); *State ex rel. Swartzlander v. State Teachers Retirement Bd.* (1996), 117 Ohio App. 3d 131, 136, 690 N.E.2d 36 (estoppel did not apply against STRS); *Smith v. State Teachers Retirement Bd.* (Feb. 5 1998), Franklin App. 97APE07-943, 1998 Ohio App. LEXIS 403 (estoppel cannot be used to abrogate the statutory schemes that strictly control the state retirement systems).

{¶ 31} Turning to respondents' interpretation of R.C. 145.38(B)(6), notwithstanding an awkward comma placement in the statutory language, OPERS' interpretation of the statute is correct.  Relator forfeited her retirement benefits for the period in which she worked as an independent contractor for the public employer from

which she retired, regardless of whether she allowed a 60-day interval to lapse before commencing contract work. The 60-day interval only shields retirement benefits when resuming contract work for a public employer from which the employee did not retire.

{¶ 32} Having determined that forfeiture of retirement benefits was required, OPERS then applied its pertinent regulations to assess relator's right to healthcare coverage during the contested period. Under Ohio Adm.Code 145-4-30(I), presenting OPERS' rules for pre-medicare coverage for retirees, "[b]enefit recipients under this rule are not eligible for coverage during any period of benefit suspension or forfeiture."

{¶ 33} In sum, OPERS properly concluded that, first, relator was subject to a suspension of benefits under R.C. 145.38(B)(6), and second, that this suspension or forfeiture mandated that relator was no longer eligible for healthcare benefits during the period of suspension or forfeiture. OPERS properly rescinded coverage for the period in question and refunded insurance premiums withheld from relator's monthly retirement benefits. Relator has not demonstrated a clear legal right to health insurance coverage during her period of work as an independent contractor with the former public employer from which she retired, or a clear legal obligation on the part of OPERS to provide such benefits.

{¶ 34} Nor has relator demonstrated a clear legal duty on the part of OSU to address any aspect of this situation. Relator has demonstrated no clear legal duty on the part of OSU, either under law or contract, to remedy the gap in healthcare coverage for her. While relator proposes that OSU must refund money to OPERS in connection with healthcare coverage, as it did for payment of the monthly retirement benefit, this would not resolve relator's gap in healthcare coverage because payment of funds to OPERS in this respect would in no way create an obligation or even a legal right on the part of OPERS to provide healthcare coverage to relator for the months in dispute.

{¶ 35} It is therefore the decision and recommendation of the magistrate that relator is not entitled to a writ of mandamus in this case against either respondent.

/S/ MAGISTRATE
MARTIN L. DAVIS

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).